UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 21-0947

BURTON R. RIPLEY, PETITIONER,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before ALLEN, *Chief Judge*, and PIETSCH, BARTLEY, GREENBERG, MEREDITH, TOTH, FALVEY, LAURER, and JAQUITH, *Judges*.

**O R D E R**

MEREDITH, *Judge*, filed the order of the Court. JAQUITH, *Judge*, filed a dissent in which GREENBERG, *Judge*, joined.

In February 2021, former petitioner Nyna Murray,[1] through counsel filed a petition for extraordinary relief in the form of a writ of mandamus and a request for class certification and class action (RCA). Several months later, in November 2021, she filed an amended RCA and asked the Court's permission to amend the petition in part to add the petitioner, Burton R. Ripley, as a named petitioner and to represent a class of similarly situated claimants. On December 10, 2021, the Court granted her request and filed the amended petition.[2]

To summarize the crux of this case, VA is obligated, upon request, to "furnish . . . all instructions and forms necessary" for a person to apply for a benefit under the laws administered by VA. 38 U.S.C. § 5102(a). When an individual alerts VA that he or she intends to file a claim, VA generally seeks to fulfill that obligation by providing the prospective claimant with a letter explaining that those forms may be found on VA's website. If an individual asks VA for a paper form, it is VA's policy to provide it. In the petitioner's view, however, claimants should not have to take any extra steps to secure paper forms, and electronic access may not be optimal or possible for all claimants, particularly the elderly, indigent, and those claimants who lack computer or internet access. He thus seeks the Court's intervention to require VA to automatically provide paper copies to the claimants falling within his proposed class.

Notably, after the petitioner notified VA of his own intent to file a claim and VA responded with information about the forms on its website, he waited only 9 days before hiring current

---

[1] In May 2022, the Court dismissed the petition as it related to Ms. Murray because it had become moot by virtue of her death. *See White v. West*, 11 Vet.App. 8, 9 (1998) (per curiam order).

[2] The case was argued before a panel of the Court on September 16, 2022. Following a request for en banc consideration by a Judge in active service and a vote among the Judges in regular active service, the case was submitted to the en banc Court on February 12, 2025. *See* U.S. VET. APP. IOP at VII(b)(2).

counsel and another 7 days before seeking to join this lawsuit.[3] He does not allege that, during that 16-day window, he asked VA to provide paper copies to him, that he personally was unable to electronically access VA forms, that he took any other steps to try to obtain the necessary form, or that VA's policy generally, or its specific actions in this case, impacted or could have impacted his ability to apply for VA benefits. Indeed, the record is devoid of evidence suggesting that the petitioner is among the group of claimants that he seeks to protect. To the contrary, the record reflects that NVLSP—the same counsel that is seeking to represent the class—mailed the petitioner's ITF form to VA. Accordingly, as explained below, the Court concludes that the petitioner has not shown that he has standing to bring this action, that he has exhausted his administrative remedies, or that a class should be certified. The Court will thus grant the Secretary's motion to dismiss the amended petition for extraordinary relief, and the Court will deny the amended RCA.

## I. BACKGROUND

The petitioner, Burton R. Ripley, served in the U.S. Army from August 1970 to July 1971. Amended Petition (Pet.), Exhibit (Ex.) H at 1. As mentioned, on October 29, 2021, he completed an ITF form. Secretary's Response (Resp.) to Amended Pet. and Amended RCA, Attachment (Attach.) F. The next day, NVLSP mailed his ITF form to VA, *id.*, and VA received his completed form on November 1, 2021, Amended Pet., Ex. H-2.

In a November 2, 2021, letter, VA responded with information about how to access an application form on VA's website. *Id.* Within the next 2 weeks, the petitioner hired current counsel and signed a declaration explaining that he submitted an ITF form and that VA's response did not include the form needed to apply for benefits but instead informed him where to locate VA claims forms on VA's website. Amended Pet., Ex. H at 1. The petitioner declared that he did not receive any other mail from VA regarding his ITF; VA did not provide him with a paper copy of any form needed to apply for VA benefits; he did not possess the VA form needed to apply for compensation benefits; and he had not submitted an application for benefits. *Id.*, Ex. H at 1-2. After the petitioner joined this action and thus expressed a need for a paper form to apply for VA benefits, on December 16, 2021, VA mailed him the requisite form. Secretary's Resp. to Amended Pet. and Amended RCA, Attach. G.

### A. Amended Petition and Amended RCA

In the amended petition, the petitioner avers that section 5102(a), which requires the Secretary, upon request, to "furnish . . . free of all expense, all instructions and forms necessary to apply for . . . benefit[s]," 38 U.S.C. § 5102(a), and the Secretary's implementing regulations, 38 C.F.R. §§ 3.150 and 3.155, "unambiguously require[] the Secretary to mail or deliver hard copy forms to claimants" who request an application or express an intent to file a claim for benefits,

---

[3] Specifically, the petitioner completed a VA Form 21-0966, Intent to File a Claim for Compensation and/or Pension, or Survivors Pension and/or DIC (ITF form), on October 29, 2021; the National Veterans Legal Services Program (NVLSP) mailed his ITF form to VA on October 30, 2021; VA received his completed form on November 1, 2021; VA responded in a November 2, 2021, letter with information about how to access an application form on the VA website; the petitioner hired current counsel on November 11, 2021; and Ms. Murray filed a motion for leave to permit the petitioner to join this litigation on November 18, 2021.

Amended Pet. at 12; *see* Amended RCA at 6 (asserting that "the Secretary's obligation to 'furnish' forms requires him to deliver application forms to claimants with reasonable assurance that those forms will be received," and therefore, "[u]nless a claimant has accessed an application through eBenefits, the only way to satisfy the furnishing requirement . . . is to actually provide a physical paper form, [because] significant numbers of veterans and survivors lack internet access"). The petitioner asserts that "[t]he Secretary's unlawful withholding of paper forms inflicts real harm[, because c]laimants may be unable to access application forms at all, or at best are forced to expend additional time and resources to locate the forms that should have been provided to them directly." Amended Pet. at 18.

The petitioner argues that he has a clear and indisputable right to a writ of mandamus, and he maintains that he lacks alternative means to obtain the desired relief because he "did everything required to trigger the Secretary's obligation to furnish the applicable form[]"—specifically, he filed an ITF. *Id.* at 20; *see id.* at 11-19. Additionally, the petitioner avers that class relief is "appropriate and necessary" given that the issue may not otherwise be resolved on a "systemic level." Amended RCA at 2-3. Altogether, he asks the Court, on behalf of himself individually and a putative class, to provide declaratory and injunctive relief as follows:

(1) Certify a class of claimants or prospective claimants (a) "from whom the Secretary has received an [ITF] as defined by 38 C.F.R. § 3.155(b)(1)(ii)-(iii) or a Request for Application [(RFA)] as defined by 38 C.F.R. § 3.155(a), or from whom the Secretary receives an [ITF or RFA] in the future," (b) "to whom the Secretary has not mailed or otherwise delivered the appropriate VA application form for each benefit referenced in the [ITF or RFA]," and (c) "from whom the Secretary has not received an application form for each benefit selected in the [ITF or RFA]," Amended RCA at 28;

(2) "declare that the Secretary's failure to send the proposed Class members the application forms violates the Secretary's [statutory and regulatory] duty" to "furnish" application forms, *id.* at 28-29;

(3) "order the Secretary to deliver in a manner reasonably calculated to ensure receipt the appropriate application forms to all current Class members within 30 days of the Court's order, and to deliver such forms in a manner reasonably calculated to ensure receipt to future Class members promptly upon the Secretary's receipt of . . . an [ITF] other than through eBenefits or . . . a[n RFA]," *id.* at 29;

(4) "toll—for any Class member from whom the Secretary has received an [ITF] satisfying the requirements of 38 C.F.R. § 3.155(b)(1)(ii)-(iii) within one year prior to the date of the [p]etition—the one-year period afforded by 38 C.F.R. § 3.155(b), during which the Secretary considers a complete application form to have been filed on the date the Secretary received the [ITF] until a date no earlier than 180 days after the Secretary furnishes by mail or otherwise delivers in a manner reasonably calculated to ensure receipt the appropriate application forms to such class member, *provided*, however, that such tolling shall not apply to a Class member for any category of benefit where such tolling would result in a reduction of benefits payable," *id.*;

3

(5) appoint the petitioner's counsel as class counsel pursuant to Rule 23(f) of the Court's Rules of Practice and Procedure, *id.*; and

(6) "order such other relief as may be appropriate in the interest of justice and in aid of the Court's jurisdiction," *id.* at 30; *see* Amended Pet. at 2 n.1 (asking the Court to read the amended petition in conjunction with the Amended RCA, which amends the class definition and requested relief); *see also id.* at 2-4.

### B. Secretary's Motion to Dismiss and Responses

On May 24, 2022, the Secretary filed a motion to dismiss the amended petition, asserting in part that the petitioner lacks standing to bring this action.[4] Motion to Dismiss at 5-13. Specifically, he argued that the petitioner had not explained what concrete harm he experienced because of VA's alleged violation of section 5102(a), noting that the petitioner had not alleged that he was unable to complete his claim or access the application forms online. *Id.* at 8-9. In the alternative, the Secretary disputes the petitioner's contentions in full and urges the Court to deny both the amended petition and the amended RCA. Secretary's Resp. to Amended Pet. and Amended RCA at 14-50.

## II. ANALYSIS

### A. The Petitioner Lacks Standing

It should be self-evident that nobody would want to prevent veterans, their families, or their survivors from obtaining VA benefits because they cannot access the appropriate VA forms. But that is *not* what happened here. The petitioner has not alleged, let alone demonstrated, that VA— by not automatically sending him a paper application form—somehow impeded his ability to seek VA benefits. In other words, he has not been harmed by VA's actions or inactions, and that means he does not have standing to bring this lawsuit.

### *1. Law*

This Court has adopted the case-or-controversy jurisdictional requirements imposed by Article III of the U.S. Constitution. *Mokal v. Derwinski*, 1 Vet.App. 12, 13 (1990). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 37 (1976). "One element of the case-or-controversy requirement" is that the petitioner must establish that he has standing to bring the action. *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *see TransUnion v. Ramirez*, 594 U.S. 413, 423 (2021); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified

---

[4] The Court notes that before Mr. Ripley joined this action, the Secretary, on April 26, 2021, moved to dismiss the February 9, 2021, petition filed by former petitioner Ms. Murray, and the Court had not acted on that motion prior to Ms. Murray's death. The Court will thus deny that motion as moot, and the Court will rule only on the pending May 24, 2022, motion to dismiss in which the Secretary argues that Mr. Ripley lacks standing to bring this action.

4

members of the class to which they belong and which they purport to represent.'" *E. Ky. Welfare Rts. Org.*, 426 U.S. at 40 n.20 (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

Generally, to establish standing, "a party must demonstrate an injury in fact that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Freund v. McDonough*, 35 Vet.App. 466, 481 (2022) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)), *vacated*, *Freund II*, 114 F.4th 1371 (Fed. Cir. 2024). "An alleged harm need not be tangible to be 'concrete,' but it must be 'real,' and not 'abstract.'" *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc.*, 578 U.S. at 340. But the U.S. Supreme Court has rejected the proposition that we may "'treat an injury as "concrete" for Article III purposes based only on Congress's say-so.'" *TransUnion*, 594 U.S. at 426 (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 999 n.2 (11th Cir. 2020)). The petitioner thus cannot simply "allege a bare procedural violation, divorced from any concrete harm," to satisfy the injury requirement. *Spokeo, Inc.*, 578 U.S. at 341; *see TransUnion*, 594 U.S. at 427 ("[A]n injury in law is *not* an injury in fact." (emphasis added)). Under Article III, a federal court may resolve only "a real controversy with real impact on real persons." *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 87 (2019) (Gorsuch, J., concurring); *see Casillas*, 926 F.3d at 332 ("Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.").

### 2. No Injury in Fact

Here, the petitioner argues that he was harmed by the Secretary's failure to provide him with a paper application form because he was forced to take further action to seek out forms that the Secretary is required by law to provide. Opposition to Motion to Dismiss at 1-2; *see* Amended RCA at 11-12 (asserting that the putative class "suffer[s] a common injury by being forced to assume the added burden of seeking out forms that the Secretary is required by law to provide and does not"). And he contends "that the Secretary's conduct creates an imminent risk to claimants' ability to access benefits." Opposition to Motion to Dismiss at 4. The Court disagrees.

To begin, although Congress imposed an obligation on VA to furnish application forms, the petitioner has not alleged that the manner in which the Secretary sought to fulfill that obligation—via direction to VA's website—personally rendered him unable to obtain the required form or at risk of being unable to apply for VA benefits. *See Strubel v. Comenity Bank*, 842 F.3d 181, 193 (2d Cir. 2016) (concluding that Strubel lacked standing to challenge Comenity's notice failure because she could not and did not claim that "the challenged notice denied her information that she actually needed"). Indeed, the petitioner has not asserted that he lacks access to a computer or the internet; the record shows that NVLSP mailed his ITF form to VA and that he was represented by a veterans service organization (VSO)[5] when he submitted that form; and he

---

[5] The November 2, 2021, letter from VA to the petitioner reflects as follows: "Our records indicate that you have appointed VETERANS OF FOREIGN WARS OF THE US as your authorized representative to assist you with your claim. We encourage you to consult with them prior to submission of your claim . . . ." Amended RCA, Attach. H-2. In order for a VSO to be recognized by the Secretary to represent individuals before the Agency, the organization must "[m]aintain a policy and capability of providing *complete claims service* to each claimant requesting

5

obtained experienced counsel less than 2 weeks after he submitted his ITF form.[6] *See* Amended Pet. at 18 ("Claimants *may* be unable to access application forms." (emphasis added)); *id.* at 19 ("[M]any veterans lack [i]nternet access."). *But see* Retainer Agreement at 3-4, *Ripley v. Collins*, U.S. Vet. App. No. 21-0947 (Sept. 13, 2022) (agreeing, in a November 11, 2021, engagement letter, that "both [the petitioner] and "[Covington & Burling, LLP,] may use *electronic devices and* [*i*]*nternet services* to communicate with each other . . . . [and] that the benefits of using such technology outweigh the risks of unauthorized disclosure" (emphasis added)). In other words, there is no evidence that, on the date the petitioner joined this litigation, VA's actions or inactions had in any way impacted his ability to apply for benefits. *See Freund II*, 114 F.4th at 1377 n.4.

Thus, even assuming, as the Second Circuit did in *Strubel*, that VA's notice letter is inadequate to fulfill VA's statutory obligation, the petitioner has not alleged or shown that this failure created a material risk of harm to his interest in being able to apply for VA benefits on the appropriate form. *See Strubel*, 842 F.3d at 192-93; *see also Trichell*, 964 F.3d at 1001 ("With no plausible allegation that *they* were ever at substantial risk of being misled, [plaintiffs] cannot show standing based on such a risk to others."). In this regard, it is noteworthy that the petitioner does not explain how he obtained the ITF form that he completed on October 29, 2021, or indicate why he would have been at an imminent risk of being unable to obtain a different VA form from the same source.[7] However, as stated above, the record reflects that NVLSP, the attorneys seeking to represent the class, mailed the petitioner's ITF form to VA on October 30, 2021. *See* Secretary's Resp. to Amended Pet. and Amended RCA, Attach. F (priority mail envelope listing NVLSP's return address); Amended RCA at 27 (proposing class counsel); Amended RCA, Ex. F (declaration by co-counsel, an attorney working for NVLSP).

### 3. Bare Procedural Violation Alone Is Not Sufficient

To the extent that the petitioner maintains that he has Article III standing because he had to take on an additional burden not contemplated by section 5102 to obtain the application form, Oral Argument (OA) at 4:00-4:21, *Ripley & Butler v. McDonough* (No. 21-0947), https://www.youtube.com/watch?v=CULq0JFvYuw, the Court recognizes that "violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo, Inc.*, 578 U.S. at 342. However, the petitioner has not shown that this is such a case.

---

representation or give written notification of any limitation in its claims service with advice concerning the availability of alternative sources of claims service." 38 C.F.R. § 14.628(d)(1)(iv) (2024) (emphasis added). Additionally, to appoint a VSO as his or her representative, a VA claimant signs a form containing this language: "I . . . hereby appoint the service organization named [in the form] as my representative to *prepare, present and prosecute my claim(s)* for any and all benefits from [VA]." VA Form 21-22, Appointment of Veterans Service Organization as Claimant's Representative (emphasis added).

[6] The November 11, 2021, engagement letter signed by the petitioner and lead counsel reflects that the firm's assistance was "requested by [an attorney] of NVLSP." Retainer Agreement at 1, *Ripley v. Collins*, U.S. Vet. App. No. 21-0947 (Sept. 13, 2022); *see id.* (reflecting that the petitioner hired Covington & Burling LLP and NVLSP as co-counsel).

[7] The Court also notes that the petitioner's October 2021 ITF form reflects that he completed his form through electronic means because only his signature and the date he signed the form are handwritten. *See* Secretary's Resp. to Amended Pet. and Amended RCA, Attach. F.

As an initial matter, the petitioner's reliance on *Animal Legal Defense Fund* (*ALDF*) *v. U.S. Department of Agriculture*, 935 F.3d 858, 866-67 (9th Cir. 2019)—for the proposition that "where a defendant's removal of a statutorily required mechanism for accessing a benefit forces a claimant to take action [he] would not need to otherwise take, concrete injury results"—is misplaced. Opposition to Motion to Dismiss at 2. In *ALDF*, the plaintiffs alleged "procedural injuries" in that the agency failed to comply with the Freedom of Information Act's (FOIA's) reading room provision, which requires government agencies to make certain information electronically available to the public without a FOIA request. 935 F.3d at 866; *see id*. at 862 (citing 5 U.S.C. § 552(a)(2)). Although the Ninth Circuit found that *ALDF* had standing to force the agency to comply with the statute, the Ninth Circuit did not assess whether the alleged violation alone was a sufficient injury in fact. To the contrary, the court stated that "we need not decide whether a bare statutory violation constitutes a cognizable injury in fact, because Plaintiffs allege that the agency's failure to make records available in its virtual reading rooms has 'caused some real—as opposed to purely legal—harm to the plaintiff.'" *ALDF*, 935 F.3d at 867 (quoting *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017)). Specifically, the plaintiffs alleged that its members lack timely information; managing voluminous FOIA requests costs time and money; and waiting for the agency to produce records after a request would render the information stale. *See id.*

There are no similar allegations here. Instead, the petitioner seems to contend that the burden or inconvenience of having to take an extra step to obtain an application form—whether it is by accessing VA's website, asking his representative for assistance, or informing VA that he is unable to access its website—is a concrete harm, but he does not dispute the Secretary's contention that "the underlying concrete interest Congress and the Secretary sought to protect . . . [is] the ability to seek benefits." Motion to Dismiss at 11 n.21. At no point has he shown that his personal ability to file a claim for benefits was at any appreciable risk. *See TransUnion*, 594 U.S. at 440 (rejecting the argument that receiving information in the wrong format amounted to concrete harm when the plaintiffs presented no evidence "'that they were confused, distressed, or relied on the information in any way'" (citation omitted)); *see also* OA at 39:20-40:10 (asserting that it is "very significant" that the petitioner was represented by a VSO who had the obligation to do the very thing that the petitioner alleges as harm); *id.* at 40:30-41:30 (stressing that the petitioner sued the Government within 18 days after submitting his ITF form, and that, to accept his contention that he was injured, the Court would have to accept that the Secretary was required to immediately provide a paper application). Indeed, as the facts show, the petitioner could have obtained a paper application by calling VA or asking his VSO for assistance. *See* 38 U.S.C. § 5902 (providing that VA may recognize a VSO to assist in "the preparation, presentation, and prosecution of claims"); Secretary's Resp. to Amended Pet. and Amended RCA at 8 n.14 (explaining VA's policy of offering to mail forms). Under these circumstances, it is clear that the petitioner has not identified more than a procedural violation.

In sum, the petitioner has not alleged or shown that he suffered any "concrete and particularized" harm that is or was "'actual or imminent, not conjectural or hypothetical'" as a result of the Secretary's challenged conduct, *Defs. of Wildlife*, 504 U.S. at 560 (citations omitted), and therefore, the petition will be dismissed. To hold otherwise would contravene a fundamental principle of our legal system and allow the petitioner to sit idly in a system, which although veteran

friendly, ultimately requires a claimant to be an active participant in pursuing his claim.[8] *See, e.g.*, 38 U.S.C. § 5107(a) ("[A] claimant has the responsibility to present and support a claim for benefits."); *Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991) (observing that "[t]he duty to assist is not always a one-way street").

## B. The Petitioner Has Not Shown a Lack of Alternative Means to Attain Relief

Even assuming that the petitioner could show that he has standing to bring this action, there is simply no factual or legal basis for issuing a writ. Principally, the petitioner cannot show that he lacked adequate alternative means to attain his desired relief because, upon receiving VA's letter referring him to the website to obtain the necessary form, he almost immediately joined this lawsuit without taking any steps whatsoever to resolve the dispute. In other words, he seeks to use a writ as a first resort rather than as a last resort. This is contrary to well-established caselaw.

### 1. Law

"The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 402 (1976). Accordingly, three conditions must be met before a court may issue a writ: (1) The petitioner must lack adequate alternative means to attain the desired relief, thus ensuring that the writ is not used as a substitute for an appeal; (2) the petitioner must demonstrate a clear and indisputable right to the writ; and (3) the Court must be convinced, given the circumstances, that issuance of the writ is warranted. *See Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004). The petitioner bears the burden of demonstrating entitlement to a writ of mandamus. *See Gardner-Dickson v. Wilkie*, 33 Vet.App. 50, 55 (2020) (order), *aff'd per curiam sub nom. Gardner-Dickson v. McDonough*, No. 2021-1462, 2021 WL 5144367 (Fed. Cir. Nov. 5, 2021) (Rule 36 judgment); *see also Erspamer v. Derwinski*, 1 Vet.App. 3, 9 (1990).

### 2. There Are Adequate Alternatives

As noted above, on November 1, 2021, VA received the petitioner's ITF form. Secretary's Resp. to Amended Pet. and Amended RCA at 11 n.25; Attach. F. The following day, VA sent the petitioner an automatically generated letter with directions to the online forms needed to complete his application and encouraged the petitioner to consult with his representative if he had any questions. Amended Pet., Ex. H-2. Over the next 17 days, the petitioner retained current counsel, requested to join this action, and completed a declaration stating that (1) VA did not provide him with a paper copy of VA Form 21-526EZ, Application for Disability Compensation and Related

---

[8] In this regard, we briefly respond to the dissent. First, to the extent that the dissent doubts whether VA's policy truly is to provide a paper form when asked and relies on their interpretation of section 5102 as requiring delivery of a paper form, even if accurate, that does not undermine our conclusion that this particular petitioner has not alleged or demonstrated that VA's actions or inactions impacted *his* ability to apply for benefits, and thus he has no injury in fact. Similarly, although the dissent suggests that the petitioner had no option but to join this litigation, that in no way explains how it would be consistent with controlling law for the petitioner to request the drastic remedy of mandamus before making any attempt to resolve this issue with the Agency. Finally, the dissent asserts that we have confused standing with mootness, but our analysis shows clearly that, by focusing only on the timeframe prior to Mr. Ripley joining the lawsuit, (1) we are unequivocally addressing standing, (2) we in no way rely on the fact that VA provided Mr. Ripley a paper form *after* he joined the litigation as a basis for dismissal, and (3) we do not make any holdings as to mootness.

8

Compensation Benefits, which he needs to apply for benefits, and (2) he does not possess the required form. Amended Pet., Ex. H at 1-2. Remarkably absent from his declaration and the amended petition are any assertions that the petitioner asked VA to provide him with a paper application or that VA either ignored or denied such a request. Further, as indicated above, the petitioner has never alleged that he in fact was unable to access the internet to obtain the application, nor has he ever suggested that he would have been unable to file a claim for benefits without VA sending him a paper form.

Instead, the petitioner argues that, by submitting an ITF form, he "did everything required to trigger the Secretary's obligation to furnish the applicable form[]." Amended Pet. at 20; *see* Petitioner's Reply at 12-14. He contends that, when the Secretary failed to send him a paper copy of the form 1 day after he filed his ITF form, there were no other procedural steps to take to obtain the desired relief. He posits, therefore, that he had no obligation to make any effort to resolve this matter before filing his petition. Petitioner's Reply at 12-14. The Court disagrees. *See Costanza v. West*, 12 Vet.App. 133, 134 (1999) (per curiam order) ("The filing of a petition before this Court is a serious matter and not a step to be taken lightly."), *abrogated on other grounds by Martin v. O'Rourke*, 891 F.3d 1338 (Fed. Cir. 2018).

Issuing a writ requires extraordinary circumstances, and among those is having no adequate alternative means to attain the relief sought. *See Kerr*, 426 U.S. at 403; *see also In re Paxton*, 60 F.4th 252, 259 (5th Cir. 2023) ("Because mandamus is a remedy of last resort, the writ cannot issue unless the petitioner has no other adequate means of obtaining the relief he seeks."); *Process & Indus. Devs. v. Federal Republic of Nigeria*, 962 F.3d 576, 582 (D.C. Cir. 2020) (recognizing that "mandamus is an option of last resort, available only if a party lacks adequate alternative remedies"); *Erspamer*, 1 Vet.App. at 11 (concluding that the petitioner had no adequate alternative means for relief when she contacted the regional office more than 30 times before filing her petition with the Court). As the U.S. Supreme Court has explained, "whatever may be done without the writ may not be done with it." *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953). Here, it is the Secretary's policy that "[a]ny prospective claimant who needs or wants a paper application and has not received one can obtain relief simply by asking the Secretary for one," Secretary's Resp. to Amended Pet. and Amended RCA at 39, and the facts of this case indeed prove the Secretary's point, *see id.*, Attach. G (enclosing a paper application for disability compensation with a December 16, 2021, letter to the petitioner); *see also id.* at 39 (noting that the petitioner "do[es] not allege that the Secretary refuses to provide paper copies of applications to prospective claimants who ask or otherwise express a need for one [and] do[es] not identify even a single instance in which that has occurred"). But the petitioner, before joining this lawsuit, did not make any attempt to obtain a paper claim form, to otherwise access the appropriate form, or to file his claim. For these reasons, the Court concludes that the petitioner has not met the first *Cheney* condition, and he therefore has not established entitlement to a writ.

## C. Class Relief Is Unwarranted

Because the petitioner has not established standing or shown that he lacks an adequate alternative to obtain the desired relief, the Court need not address the question of class certification. *See Skaar v. Wilkie*, 32 Vet.App. 156, 173 (2019) (en banc order) ("'If the individual plaintiffs lack standing, the court need never reach the class action issue.'" (quoting *Hawecker v. Sorensen*,

9

No. 1:10-cv-00085 OWW JLT, 2011 WL 98757, at *2 (E.D. Cal. Jan. 12, 2011))), *vacated on other grounds sub nom. Skaar v. McDonough*, 48 F.4th 1323 (Fed. Cir. 2022). Accordingly, the Court will deny the petitioner's amended RCA.

### III. CONCLUSION

The petitioner requested to join this lawsuit 16 days after the Secretary informed him that VA's forms to apply for benefits may be found on VA's website, but the petitioner has not shown that he *personally* attempted to obtain or was unable to access those forms, that *he* was at imminent risk of being unable to apply for VA benefits—the undisputed interest that Congress sought to protect by requiring the Secretary to furnish application forms—or that joining this litigation was a last resort in his attempt to apply for VA benefits. Indeed, if a paper form was needed, a phone call to VA would have sufficed. Under the circumstances, the Court concludes that the petitioner does not have standing to bring this action; the drastic remedy of mandamus is unwarranted; and the petitioner is not entitled to a ruling on the merits. Accordingly, it is

ORDERED that the Secretary's April 26, 2021, motion to dismiss the February 9, 2021, petition for extraordinary relief is denied as moot. It is further

ORDERED that the Secretary's May 24, 2022, motion to dismiss the amended petition for extraordinary relief is granted. It is further

ORDERED that the February 9, 2021, petition for extraordinary relief in the form of a writ of mandamus, as amended by the December 10, 2021, petition, is DISMISSED. It is further

ORDERED that the February 9, 2021, RCA, as amended by the November 18, 2021, RCA, is DENIED.

DATED: March 24, 2025

JAQUITH, *Judge*, with whom GREENBERG, *Judge*, joins, dissenting: Nothing to see here, the majority says, because the petitioner wasn't injured. But the majority's conclusion flows from a mistaken premise, leading to a misapplication of the standing rule and resulting in the majority ignoring VA's persistent, blatant violation of its statutory obligation, so I respectfully dissent. And I include the entire draft panel order that the en banc majority prevented the panel from issuing.

### The Petitioner Has Standing

Regarding standing, the majority fails to properly apply the particulars of the rule it purports to vindicate. Mr. Ripley plainly suffered an actual, concrete, particular violation of his legally protected interest in being furnished an appropriate application form in response to his request for one. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-42 (2016). *Spokeo* cited with approval two Supreme Court cases holding that a plaintiff's failure to obtain something promised by statute constitutes sufficient injury-in-fact. *Id.* at 342 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998); *Pub. Citizen v. Dep't of Just.*, 491 U.S. 440, 449 (1989)). The veteran's

petition seeks enforcement of the statute Congress crafted to protect veterans' concrete interest in having the application form VA requires—for him to exercise his fundamental constitutional right to access VA's exclusive adjudicative forum for securing benefits—furnished to him. *See Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1115 (9th Cir. 2017). The very basis for VA's insistence on veterans formally submitting a specified standard application form—and acknowledgment of its obligation to furnish that form—was its complaint that claimants not furnished and required to submit a specified form had been unlikely to do so. VA argued that "approximately half of the claimant population" instead relied on "non-standard submissions" such as "various documents other than claims forms to constitute claims, specifically, VA reports of hospitalization or examination and other medical records which could be regarded as informal claims," which VA said "add[ed] to delays in processing and adjudicating claims and appeals and the overall timeliness of delivering benefits to claimants." Standard Claims and Appeals Forms, 79 Fed. Reg. 57,660, 57,660-61 (Sept. 25, 2014) (codified at 38 C.F.R. pts. 3, 19, 20). VA explicitly promised that, when it received an intent to file a claim, orally or on the form Mr. Ripley submitted, "VA will notify the claimant . . . of any information necessary to complete the formal application form . . . and, as statutorily required pursuant to 38 U.S.C. 5102, VA will furnish the claimant with the appropriate application form(s)." *Id.* at 57,667. VA added that a message requesting benefits "clearly triggers VA's obligation to send the correct form." *Id.* At the same time, VA promulgated a regulation enshrining that promise, 38 C.F.R. § 3.155(b) (2015). Apparently, VA recognized then that a claimant who is not furnished an appropriate form is not likely to file one, and the 50% who didn't would thereby lose any entitlement to benefits the law affords them. *See Strubel v. Comenity Bank*, 842 F.3d 181, 190-91 (2d Cir. 2016). VA also dropped its plan to incentivize electronic claim submission, declaring that

> Modernization and standardization must accommodate the interests and preferences of the veterans and other stakeholders for whose benefit we seek to modernize the process, and the comments make clear that many veterans and stakeholders continue to prefer more informal processes than VA originally proposed. Accordingly, necessity may dictate more continued reliance on non-electronic submissions than was originally proposed.

79 Fed. Reg. at 57,664.

Unfortunately, VA has disregarded its statutory obligation and its regulatory promises. And the majority fails to fulfill the obligation of the Court to "compel action of the Secretary unlawfully withheld." 38 U.S.C. § 7261(a)(2); *see Stegall v. West*, 11 Vet.App. 268, 271 (1998). That failure rests on a mistaken premise, that "If an individual asks VA for a paper form, it is VA's policy to provide it." *Ante* at 1. That is what VA's lawyer *argued*, but the record belies that argument. The petitioner (and the two former petitioners) asked for the application forms VA requires and did so in the way VA prescribes—by sending VA a completed intent to file form. *See* 38 C.F.R. § 3.155(b). That form, VA Form 21-0966, emphatically assured Mr. Ripley (as it had Mrs. Murray and Ms. Butler) that VA would respond with the specified form, saying "IMPORTANT: After receiving this form, VA will give you the appropriate application to file for the general benefit you select above." Amended Pet., Exh. H-1. But VA's form lied. VA gave the petitioner no application form. Instead, VA sent a template letter that specified that he could locate the form at VA's website and warned that VA would take no further action until it received his completed application. VA's letter said nothing about any other way to get an application form—and nothing about a paper

11

form being available.[9] As a result, Mr. Ripley joined in the petition, taking the only path the law provides to compel VA action. And it worked. In response to his petition, VA sent Mr. Ripley the appropriate application form—apparently overestimating the inevitability of Court compulsion.

The majority makes the same mistake the Court made in *Freund I*—confusing standing with mootness by failing to assess harm "[a]s of the date the petition was filed." *Freund v. McDonough* (*Freund II*), 114 F.4th 1371, 1377 n.4 (Fed. Cir. 2024), *vacating Freund I*, 35 Vet.App. 466 (2022).[10] *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021) ("The doctrine of standing generally assesses whether [the plaintiff's personal] interest [in the dispute] exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings."). The majority's conflation of standing and mootness is understandable because it is clear that, considered separately, Mr. Ripley had standing to join the petition, and VA's provision of an application form in response to that petition does not render it moot, for the Court does not dismiss a case as moot based on an instance of voluntary compliance when VA indicates that it will, without judicial intervention, continue the allegedly wrongful behavior it vigorously defends as lawful and a management prerogative. *See  West Virginia v. EPA*, 597 U.S. 697, 720 (2022). And that is emphatically true when, as here, the inherently transitory exception applies to others similarly situated in a proposed class. *See Freund II*, 114 F.4th at 1380-81.

The day Mr. Ripley joined the petition, he had suffered an injury traceable to VA's conduct—he had requested an application form, and VA responded by declining to provide one, thereby denying the veteran VA's exclusive avenue for access to the benefits earned by his military service, or at least delaying that access and transferring the burden of finding the appropriate form to him. VA promulgated regulations requiring specified forms, and it promised to fulfill its statutory obligation to furnish them because half of claimants had wrongly submitted nonstandard applications. It is indisputable that it is a benefit for VA to furnish the veteran the necessary application forms, for it saves the veteran the time, effort, and resources involved in figuring out which forms are necessary, finding those forms, and acquiring them. *See Rosinski v. Wilkie*, 31 Vet.App. 1, 8 (2019) (per curiam order). The fact that there were, when his request for forms was denied and he joined the petition, other ways for the veteran to acquire an appropriate application "does not negate the fact that he [was] denied this avenue to do so or excuse the extra burdens imposed by those alternate methods." *Id.* at 9.

The risk of harm that confers standing, *see Spokeo*, 578 U.S. at 341-42, is firmly established by the Secretary's automatically generated letter referring the veteran to VA's website, with no

---

[9] In this litigation,  the Secretary provided the Court a heavily redacted copy of his internal guidance for VA public contact representatives, who "must direct the claimant to file online through VA.gov [and] instruct [the claimant] on how to obtain the form from [the website  (www.va.gov)]," and also allowed that the representative could offer to email the form, mail the form, or provide it in person. Secretary's Response (Resp.) at 7-8, Attachment H. Even internally, VA did not state that "if an individual asks VA for a paper form, it is VA's policy to provide it," or other words to that effect. Most importantly, no notice of any option other than locating an appropriate form from VA's website was ever given to the veteran. Perhaps VA's argument foreshadows a future announcement and notice to veterans of such a policy.

[10] In *Freund I*, 35 Vet.App. 466, 482-83 (2022), the Court concluded that the petitioners lacked standing to secure a declaration that VA unlawfully withheld action by erroneously closing their appeals and unlawfully provided no notice of the closure because any future harm from the unlawful action was speculative.

notice of any other avenue for obtaining the necessary application forms and a warning that VA would take no action until the form it wouldn't furnish was obtained, completed, and submitted.[11] The majority's contrary holding endorses VA leaving veterans to find forms for themselves, notwithstanding the furnishment requirement of 38 U.S.C. § 5102, with a self-help standard that requires veteran service organizations (VSO) and attorneys to fulfill VA's responsibilities. But the notion that the veteran has no standing because he has access to a VSO or a lawyer could excuse all manner of VA failures, since a VSO or lawyer can tell the veteran his or her rights, responsibilities, and deadlines, as well as VA's obligations, without VA providing any notice.

VA made clear by its responses regarding petitioners' requests for forms and its conduct of this case that it is completely focused on a web-based paperless claims system and uninterested in its obligation to furnish application forms in a manner reasonably calculated to ensure their receipt—including to those without internet access or proficiency and those who prefer paper when completing essential forms requiring them to gather and enter a lot of information—which VA might have achieved simply by affording veterans an opportunity to choose how to receive application forms on their intent to file forms or providing notice in their automatically generated response letters of a way to get application forms other than via VA's website. Instead, VA accused 88-year-old Mrs. Murray, suffering from paralysis following a stroke and unable to use a computer or drive, of being uninterested in access to the forms needed to apply for benefits but interested only in "seeking control and dominion over the Secretary's policies and procedures." Secretary's Resp. to Pet. at 3. When Mrs. Murray secured assistance to obtain and file an application for benefits a year after she requested an application that VA never furnished, VA trumpeted—in its response, one month after she died, to her amended petition—Mrs. Murray's achievement as evidence that VA's automatically generated letter's referral exclusively to its website for forms was no problem. Secretary's Resp. to Amend. Pet. at 9-10. VA's answer for the more than 20% of veterans who have no internet access (which requires equipment and service that cost money, though the statute says VA must furnish forms without expense to claimants) was to argue that requiring claimants to get forms from its website was no more than their having to go to their mailbox and open their mail. *See* Oral Argument (OA) at 28:25-28:37, *Ripley & Butler v. McDonough* (No. 21-0947), https://www.youtube.com/watch?v=CULq0JFvYuw. And the Secretary defiantly asserted that "how he carries out his obligation to furnish application forms is not a matter over which . . . this Court [has] any say." Secretary's Resp. to Amended Pet. at 34-35.

---

[11] The veteran requested a form, and VA responded by refusing to furnish one, with no notice of any means to challenge that refusal or otherwise obtain a paper form, resulting in Mr. Ripley joining the petition. VA's negative response to Mr. Ripley's request for a form did not even include information regarding contacting VA with any questions or need for assistance. Amended Pet., Exh. H-2. The additional work the majority believes Mr. Ripley could and should have engaged in to induce VA to furnish him with the application necessary for him to pursue benefits is part of the injury the Court should remedy. Risk of harm supports standing, so add the risk that VA's failure to furnish the form it requires and failure to provide notice of how to get one (outside of VA's website) makes benefits to which the veteran is entitled completely unavailable. What injury-avoidance actions are being prescribed by the majority? Will the Court perform VA's duty to provide notice and advise petitioners that they must make additional efforts to get VA to fulfill its statutory obligation by going to or writing VA at a specified address or by calling a specified number? Even if the Court steps in to provide notice of how to accomplish additional work as prerequisites to petitioning, isn't that additional work an injury that flows from VA's violation of its statutory obligation to furnish forms? The answer to the last question is decidedly "yes."

13

It is deeply disappointing that the majority holds the veteran to more than the law requires and VA to much less. Imposing requirements beyond fulfillment of the law on veterans while excusing VA's persistent, blatant violation of its statutory obligation to furnish forms turns the pro-veteran benefits adjudication system upside down. I respectfully dissent.

What follows is the draft panel order the majority prevented the panel from issuing:

## The Draft Panel Order

### I. OVERVIEW

Petitioner Burton R. Ripley challenges the manner in which the Secretary provides potential claimants with applications for benefits. The petitioner believes that this issue not only warrants a writ of mandamus but also class-wide relief for all potential claimants similarly situated. The petitioner contends that the Secretary has systematically failed to fulfill the statutory requirement that, upon request of a person applying for a veterans benefit or expressing an intent to do so, the Secretary must furnish all instructions and forms necessary to apply for that benefit, pursuant to 38 U.S.C. § 5102(a). The petitioner alleges that VA's "policy and practice is to send claimants a template letter telling them where they can find those forms online," which "shifts the burden of obtaining forms to claimants[,] leaving those seeking VA's care without a means to obtain the assistance that they need"—especially those who lack internet access or the computer equipment and skills needed to locate and fill out electronic forms. *See* Petitioner's February 9, 2021, Request for Class Action (RCA) at 1.

The Secretary agrees that VA is obligated to provide application forms, but he argues that no statute or regulation "limit[s] the manner in which the Secretary is required to satisfy his obligation to furnish prospective claimants with application forms" and that the petitioner "thus fail[s] to show that the Secretary's current practice violates that obligation." Secretary's Resp. to Amended Petition (Pet.) at 18.

The Secretary has moved to dismiss the petition and class action request because the petitioner has transmitted an application for benefits and thus does not have standing to bring his petition. The petitioner disagrees, asserting that he had standing when he filed his petition, and thus his RCA is not moot under the "inherently transitory exception" because class members continue to have live claims and an individual claim is unlikely to persist long enough for adjudication of class certification in this situation.

Because the Court agrees that the petitioner and others who are similarly situated were harmed by VA to an extent requiring judicial intervention, we will certify the class proposed by the petitioner, as modified, and grant the petition for extraordinary relief in the nature of a writ of mandamus. As the dissent declares, "[i]t should be self-evident that nobody would want to prevent veterans, their families, or their survivors from obtaining VA benefits because they cannot access the appropriate VA forms." *Post* at . . . .[12] But the Secretary's disregard of his statutory obligation

---

[12] This citation referred to a section of the dissent in the draft panel order. That dissent has been redone as the majority opinion, and the quotation is now *ante* at 4.

to furnish application forms and instructions free of all expense imperils that self-evident principle by dumping his burden on veterans and their survivors and dependents, impeding their pursuit of benefits.

## II. DISCUSSION

### A. Background

On February 9, 2021, original petitioner Nyna S. Murray sought "class-wide injunctive relief and/or a writ of mandamus to compel the Secretary to comply with the law as written and mail her and all [c]lass members paper copies of the appropriate benefits applications forms." Pet. at 2. On that same date, Ms. Murray also filed a request for class certification and class action, arguing that the Secretary's failure to comply with his statutory and regulatory obligations to furnish claimants with the appropriate application forms "has injured potentially thousands of claimants similarly situated to Mrs. Murray, hindering their ability to apply for VA benefits." RCA at 6.

On April 26, 2021, the Secretary moved to dismiss the case for lack of standing. On November 18, 2021, an amended RCA included petitioner's request that the Court "provide injunctive relief by defining 'furnish' to require delivering application forms in a manner reasonably calculated to be received by claimants." Amended RCA at 18. On December 10, 2021, an amended petition was filed, joining two others with Ms. Murray as petitioners: Burton R. Ripley and Lea-Ann Butler.

A declaration by Mr. Ripley dated November 17, 2021, reflects that he served in the U.S. Army from August 1970 to July 1971. Amended Pet., Exhibit (Exh.) H. On October 29, 2021, he completed a VA Form 21-0966, reflecting his intent to apply for compensation benefits, and mailed the form to VA. *Id.*; Amended Pet., Exh. H-1; Secretary's May 24, 2022, Motion to Dismiss at 3. The preprinted VA form said: "IMPORTANT: After receiving this form, VA will give you the appropriate application to file for the general benefit you select above." Amended Pet., Exh. H-1. Mr. Ripley received a responsive letter from VA dated November 2, 2021. Amended Pet., Exh. H. VA advised Mr. Ripley that "[i]n order for VA to begin processing [his] claim for compensation, [he] must complete, sign, and return a VA Form 21-526EZ, Application for Disability Compensation and Related Compensation Benefits." *Id.* But the envelope containing VA's November 2, 2021, letter did not include a copy of that form. Amended Pet., Exh. H-1. Instead, VA's letter said: "To locate the appropriate form(s), please visit the following website: www.va.gov/vaforms." Amended Pet., Exh. H-2. And VA's letter warned that it "[would] take no further action until [it] receive[d] [his] completed application." *Id.* As of the date of his declaration, Mr. Ripley had not received from VA a paper copy of the form needed to apply for benefits; he did not have the form, and he had not submitted the form. Amended Pet., Exh. H-1. "However, on December 16, 2021, in response to his expressed need or desire for a paper application[,] the Secretary mailed him a paper application." Secretary's May 24, 2022, Motion to Dismiss at 3-4; Secretary's Resp. to Amended Pet., Attachment G.

Prior petitioners Murray and Butler had similar experiences. Mrs. Murray submitted an intent to file a claim (ITF) with the help of a state veterans services representative. Pet., Exh. F.

15

Ms. Butler mailed her ITF form to VA. Pet., Exh. I. The ITF forms Mrs. Murray and Ms. Butler submitted said that "after receiving this form, VA will give you the appropriate application to file." Pet., Exhs. F, F-1, I, I-1. But the responsive letters they received from VA did not include the appropriate application form, instead stating: "To locate the appropriate form(s), please visit the following website: www.va.gov/vaforms," and stating that VA would take no action until it received their completed applications for benefits. Pet., Exhs. F, F-2, I, I-2. Mrs. Murray said that she could not "obtain the appropriate VA claims form by using a computer and going on the internet," as VA's letter told her to do, because she was 88 years old, had suffered a stroke in 2013 and was paralyzed on her left side, generally used a wheelchair and required in-home care from a nurse, and did not know how to use a computer. *Id.* Mrs. Murray said she had not driven in 7 years and could not do so. Pet., Exh. F. At the time of their petition affidavits, neither Mrs. Murray nor Ms. Butler had received the appropriate application form (and thus had not submitted an application). Pet., Exhs. F, I. Mrs. Murray's petition was filed 351 days after she submitted her ITF. Mrs. Murray's family and her counsel "assisted her with obtaining, completing, and submitting," on February 23, 2021, a paper application for benefits—the day before the expiration of the 1-year period for filing that would relate the effective date back to the day she submitted her ITF. Petitioner's Feb. 24, 2021, *Solze* Notice; Secretary's Motion to Dismiss Amended Pet.. A VA rating decision dated June 30, 2021, denied Mrs. Murray's claim for survivors pension benefits. Murray July 14, 2021, Declaration. On August 4, 2021, VA "made a new decision" on Mrs. Murray's claim, granting a survivors pension and an additional allowance for aid and attendance and denying dependency and indemnity compensation and accrued benefits. Secretary's Resp. to Amended Pet., Attachment C. On December 16, 2021, VA sent application forms to Ms. Butler. Secretary's Resp. to Amended Pet., Attachment E.

On January 10, 2022, counsel for Mrs. Murray informed the Court that Mrs. Murray had unfortunately passed away. On May 24, 2022, the Court ordered that Mr. Ripley and Ms. Butler replace Mrs. Murray as named petitioners. That same day, the Secretary again moved to dismiss the case for lack of standing. On January 5, 2023, counsel for Ms. Butler informed the Court that Ms. Butler had unfortunately passed away in December 2022.[13]

### B. The Proposed Class

The amended petition asks the Court to certify this case as a class action, with the class composed of those (1) who have submitted or submit to the Secretary an ITF or a request for an application to file a claim (RFA), not including those who communicate an ITF "by saving a benefits application on their eBenefits[14] account"; (2) to whom the Secretary has not mailed or otherwise delivered a paper copy of an appropriate application form; and (3) from whom the Secretary has not received a corresponding complete VA application form. Amended RCA at 9. Later, the petitioner further clarified that he did not seek relief on behalf of claimants who accessed applications through eBenefits. Petitioner's Reply at 3. At oral argument, the petitioner

---

[13] The Court, in a January 16, 2025, order, removed Ms. Butler as a named petitioner as a result of her death.

[14] eBenefits is a website resulting from a collaboration between VA and the Department of Defense. https://www.ebenefits.va.gov/ebenefits/about (last visited Oct. 12, 2024). The website provides a secure environment where veterans, service members, their family members, and their authorized caregivers can safely access "personal information and perform self-service tasks," access "[a]pplications (online and PDF) for disability compensation and various benefits," and find "employment resources." *Id.*

characterized this element of the proposed class as "those who submitted an ITF or an RFA by paper or orally"—a group that "opted against beginning the claims process online," had "not consented to communicate with the Secretary through the internet," and for whom "the Secretary ha[d] no indication that they [could] do so." *See Ripley & Butler v. McDonough*, 21-9418, Oral Argument (OA) at 2:29-2:53, available at https://www.youtube.com/ watch?v=CULq0JFvYuw.

The petitioner asked the Court to declare that the Secretary's failure to send the proposed class members paper copies of application forms violates the Secretary's statutory and regulatory duty to furnish the forms free of all expense. Amended RCA at 28-29. And the petitioner asked the Court to order the Secretary to mail the forms to class members and toll the time for filing until at least 180 days after he sends them forms. *Id.*

### C. The Court's Jurisdiction

This Court was created by an act of Congress, 38 U.S.C. § 7251. The All Writs Act (AWA) provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The [AWA] unquestionably applies in the Veterans Court." *Monk v. Shulkin* (*Monk I*), 855 F.3d 1312, 1318 (Fed. Cir. 2017), *class certification denied sub nom. Monk v. Wilkie* (*Monk II*), 30 Vet.App. 167 (2018) (en banc order), *aff'd*, 978 F.3d 1273 (Fed. Cir. 2020); *see Cox v. West*, 149 F.3d 1360, 1363-64 (Fed. Cir. 1998). The AWA gives this Court "the authority to hear petitions and issue writs in aid of our jurisdiction." *Gardner-Dickson v. Wilkie*, 33 Vet.App. 50, 54 (2020) (order), *aff'd per curiam sub nom. Gardner-Dickson v. McDonough*, No. 2021-1462, 2021 WL 5144367 (Fed. Cir. Nov. 5, 2021) (Rule 36 judgment). "That includes the power of this Court to issue a writ of mandamus . . . including in aid of our *prospective* jurisdiction, where 'an alleged refusal to act would forever frustrate the ability of [this Court] to exercise its appellate jurisdiction.'" *Love v. McDonough*, 35 Vet.App. 336, 342 (2022) (per curiam order) (quoting *Erspamer v. Derwinski*, 1 Vet.App. 3, 8 (1990) (holding that "[AWA] jurisdiction is particularly applicable" to prevent frustration of the ability of the Court to exercise its prospective or potential appellate jurisdiction)), *aff'd*, 100 F.4th 1388 (Fed. Cir. 2024). In the words of the Federal Circuit, "mandamus is available to remove obstacles to the Veterans Court's prospective jurisdiction." *Freund II*, 114 F.4th at 1376. "To this end, this Court has issued writs of mandamus when VA's delay or inaction meant that a petitioner was at risk of never getting the decision needed to appeal to this Court." *Redwood v. McDonough*, 37 Vet.App. 58, 61 (2023) (per curiam order).

Injunctive relief is also a remedy available under the Court's All Writs Act authority. *Hambidge v. McDonough*, 37 Vet.App. 155, 158 (2024) (per curiam order), *appeal docketed sub nom. Hambidge v. Collins*, No. 24-1670 (Fed. Cir. Apr. 9, 2024); *see Moore v. Derwinski*, 1 Vet.App. 83, 84 (1990). In deciding whether to grant an injunction, the Court considers "(1) whether appellant is likely to succeed on the merits; (2) whether appellant is likely to suffer irreparable harm in the absence of injunctive relief; (3) whether the balance of equities tip in his favor; and (4) whether the injunction is in the public interest." *Rudisill v. McDonough*, 34 Vet.App. 176, 184 (2021), *rev'd on other grounds*, 55 F.4th 879 (Fed. Cir. 2022) (en banc), *rev'd*, 601 U.S. 294 (2024); *see Hambidge*, 37 Vet.App. at 159. As with mandamus, this Court has jurisdiction under the All Writs Act to issue an injunction in defense of our jurisdiction. *Moore*, 1 Vet.App. at

84. Mandamus and injunctions both constitute extraordinary relief and thus involve analogous inquiries. *Hambidge*, 37 Vet.App. at 159; *see Lamb v. Principi*, 284 F.3d 1378, 1382 (Fed. Cir. 2002). "A 'request for [a] mandatory injunction [is] generally judged by the same principles as [a] request for mandamus.'" *Leopold v. Manger*, 102 F.4th 491, 494 (D.C. Cir. 2024) (quoting *Swan v. Clinton*, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996)). Mandamus and injunctions "are alike in essential respects and comparable in nature and function," but "an injunction may issue to restrain an action while mandamus only compels action," so mandamus "is ordinarily the proper remedy if nothing is sought but the enforcement of a legal duty." 43A C.J.S. Injunctions § 4 (2024). *Compare Mandamus*, BLACK'S LAW DICTIONARY 1150 (11th ed. 2019) ("A writ issued by a court to compel performance of a particular act by a lower court or a governmental officer or body, usu. to correct a prior action or failure to act."), *with Injunction*, *id.* at 937 ("A court order commanding or preventing an action.").

A petitioner seeking a writ of mandamus "bears the burden of showing that we have the authority to issue a writ" in the case. *Love*, 35 Vet.App. at 343. Here, the petitioner argues that the Court has jurisdiction and the authority, under 38 U.S.C. § 7261(a), to "compel action of the Secretary unlawfully withheld," that "'the Court's jurisdiction reaches acts or omissions that could cause it to 'be prevented or frustrated from exercising [its] statutorily granted [appellate] jurisdiction'" (quoting *Wolfe v. Wilkie* (*Wolfe I*), 32 Vet.App. 1, 23-24 (2019) (order), *rev'd on other grounds sub nom. Wolfe v. McDonough* (*Wolfe II*), 28 F.4th 1348 (Fed. Cir. 2022)), and that "the Secretary's failure to furnish claim forms may cause claims to go unfiled and thus never to be subject to appellate review at this Court." Pet. at 4; Amended Pet. at 4-5. The Secretary acknowledges that "[t]he Court has authority pursuant to the All Writs Act, 28 U.S.C. § 1651, to issue extraordinary relief in the form of a writ of mandamus," Secretary's Resp. to Pet. at 18, but he argues that the "[p]etitioner fails to demonstrate a clear and indisputable right to a writ." Secretary's Resp. to Pet. at 19-38.

It is evident from the foregoing that the Court has jurisdiction to address the harm alleged by the petitioner under the AWA because that harm is framed as an "action of the Secretary [that is being] unlawfully withheld." 38 U.S.C. § 7261(a). Neither party contests the Court's jurisdiction to address this matter under the AWA, and the Court agrees that it has the authority to resolve this dispute.

In 2015, VA "eliminate[d] the concept of an 'informal claim'" to "incentivize the submission of claims in a format more amenable to efficient processing." *Bailey v. Wilkie*, 33 Vet.App. 188, 199 (2021) (quoting Standard Claims and Appeals Forms, 78 Fed. Reg. 65,490, 65,490 (proposed Oct. 31, 2013) (to be codified at 38 C.F.R. pts. 3, 19, 20)). VA's more efficient process required—and still requires—a complete claim that is "submitted 'on an application form prescribed by the Secretary.'" *Id.* (quoting 38 C.F.R. § 3.160(a) (2020)); *see* 38 C.F.R. § 3.155(d)(1) (2024) ("A complete claim is required for all types of claims."). If, as petitioner contends, VA fails to fulfill its obligation to furnish claimants with the appropriate application forms, that failure is an obstacle "to the ordinary process for review of veterans benefits decisions" subject to our authority to issue a writ under the AWA. *See Love*, 35 Vet.App. at 346.

In order for the Court to grant a writ of mandamus, a petitioner must demonstrate three things: (1) The petitioner must show that there is a lack of adequate alternative means to obtain

18

the desired relief; (2) the petitioner must prove a clear and indisputable right to the writ; and (3) the Court must be convinced that a writ is necessary. *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004); *Godsey v. Wilkie*, 31 Vet.App. 207 (2019). Mr. Ripley's first resort was to follow the procedure VA requires by regulation, 38 C.F.R. § 3.155(b), by mailing a paper ITF to request an application form, but he did not receive one. As the petitioner argues, absent a writ or injunctive relief, the proposed class has no means to compel the Secretary to furnish application forms in response to their paper ITFs or RFAs; VA's template letters said that it "[would] take no further action until [it] receive[d] [his] completed application." *See, e.g.,* Amended Pet., Exh. H-2. The Court has "exclusive jurisdiction to review decisions of the Board." 38 U.S.C. § 7252. And "if the Agency never acts, we could never exercise our jurisdiction." *Wolfe I*, 32 Vet.App. at 24.[15] For proposed class members that cannot access forms online, the Secretary's failure to furnish paper forms may prove "an insurmountable obstacle to submitting their applications." Amended Pet. at 2; *see Cardoza v. McDonough*, 37 Vet.App. 407, 419 (2024) (order) (Falvey, J., dissenting) (declaring that the Court would issue a writ to compel action by VA "if VA improperly put a roadblock between a claimant and VA's processing their claim or appeal."). And veterans have a fundamental constitutional right to meaningful access to VA's exclusive adjudicative forum for securing their entitlement to benefits. *Taylor v. McDonough*, 71 F.4th 909, 917-18 (Fed. Cir. 2023) (en banc).

### D. The Secretary's Obligation

#### 1. By Statute and Regulation

Congress, through section 5102, mandates that "[u]pon request made by any person claiming or applying for, or expressing an intent to claim or apply for, a benefit under the laws administered by the Secretary, the Secretary shall furnish such person, free of all expense, all instructions and forms necessary to apply for that benefit."[16] The Secretary has promulgated §§ 3.150 and 3.155[17] to help veterans navigate the application process within VA.

Section 3.150, titled "Forms to be furnished," dictates that "[u]pon request made in person or in writing by any person applying for benefits under the laws administered by the Department of Veterans Affairs, the appropriate application form will be furnished." 38 C.F.R. § 3.150(a) (2024). Section 3.155, titled "How to file a claim," works in concert with § 3.150(a) and explains that if someone indicates a desire to file for benefits by a communication that does not meet the

---

[15] With their paper ITFs or RFAs, proposed class members initiate proceedings that might lead to an appeal, and the petitioner contends that the Secretary's failure to furnish the forms he requires obstructs and impedes their prospective claims and thus this Court's prospective jurisdiction. *See Wolfe II*, 28 F.4th at 1359. Though it may be impossible to predict the course class members' claims might follow, "'it is sufficient to note only that the [alleged VA inaction] directly and adversely effects [our] potential and prospective appellate jurisdiction.'" *Wolfe I*, 32 Vet.App. at 23 (quoting *Erspamer*, 1 Vet.App. at 9).

[16] The duty to "furnish . . . claimants, free of all expense or charge to them, all such printed instruction and forms as may be necessary in establishing and obtaining [a] claim" for veterans benefits dates to 1862, when the obligor was the Commissioner of Pensions. An Act to Grant Pensions, sec. 9, 12 Stat. 566, 569 (July 14, 1862).

[17] *Military-Veterans Advoc. v. Sec'y of Veterans Affs.*, 7 F.4th 1110, 1140 (Fed. Cir. 2021), invalidated the preamble of § 3.155 because it created different standards for calculating the effective date for initial and supplemental claims. However, that invalidation has no bearing on the issue in this petition.

standards of a complete claim, the communication "is considered a request for an application form for benefits under § 3.150(a)," and "the Secretary shall notify the claimant and the claimant's representative, if any, of the information necessary to complete the application form or form prescribed by the Secretary." 38 C.F.R. § 3.155(a). Subsection (b) of § 3.155 is titled 'intent to file a claim' and requires that VA "furnish the claimant with the appropriate application form" if the claimant submits an intent to file a claim in a "[s]aved electronic application," in writing on a prescribed form, or orally "communicated to designated VA personnel." 38 C.F.R. § 3.155(b). In sum, submission of either an ITF or an RFA gives rise to the Secretary's obligation to furnish the claimant with appropriate application forms. And it is undisputed that the petitioner submitted an ITF. The substantive dispute centers on what the Secretary's obligation to furnish entails.

"'The starting point in interpreting a statute [or regulation] is its language.'" *Prokarym v. McDonald*, 27 Vet.App. 307, 310 (2015) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993)). "Where a statute's language is plain, and its meaning clear, no room exists for construction." *Gardner v. Derwinski*, 1 Vet.App. 584, 587–88 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). Similarly, when "the plain meaning of a regulation is clear from the language, that meaning controls and that is the end of the matter." *Petitti v. McDonald*, 27 Vet.App. 415, 422-23 (2015). The statutes and regulations governing the duty of the Secretary to provide applications to veterans do not spell out what is meant by "furnish." In the absence of an express definition, we employ a fundamental canon of textual construction, giving words "'their ordinary, contemporary, common meaning,'" which we can understand from common dictionaries. *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)); *see Prokarym*, 27 Vet.App. at 310.

At its most basic, to furnish is to "supply someone with (something); give (something) to someone." *Furnish*, NEW OXFORD AMERICAN DICTIONARY (3rd ed. 2010); *see E.W. Bliss Co. v. United States*, 248 U.S. 37, 45 (1918) ("[T]o furnish means to supply."). Furnish means "to provide what is needed." *Furnish*, MERRIAM WEBSTER COLLEGIATE DICTIONARY (11th ed. 2019). Furnish "implies the provision of any or all essentials for performing a function." *Id*.; *see Heino v. Shinseki*, 24 Vet.App. 367, 374 (2011), *aff'd*, 683 F.3d 1372 (Fed. Cir. 2012). "To 'furnish' means 'to supply, provide, or equip with whatever is necessary or useful.'" *Montalvo v. Brown*, 7 Vet.App. 312, 314 (Fed. Cir. 1995) (quoting WEBSTER'S NEW WORLD DICTIONARY 547 (3rd coll. ed. 1988)). This definition of furnish means more than mere mailing; the item "must have been actually received in order to have been 'furnished.'" *Id.; see McColley v. West,* 13 Vet.App. 553, 557 (2000) ("This Court has made clear that to 'furnish' constitutes something 'more than mere mailing,' and requires actual receipt." (quoting *Montalvo,* 7 Vet.App. at 314)).

Applying these consistent definitions to section 5102(a) and §§ 3.150 and 3.155, it is evident that the statutory and regulatory requirement to furnish forms and instructions means that the Secretary must provide whatever is essential for a claimant to file an application for benefits. Recall that section 5102(a) requires the Secretary to furnish claimants "all instructions and forms necessary to apply" for benefits. And VA's own regulations require a very specific application form to be filled out and submitted, *see* 38 C.F.R. §§ 3.151, 3.152 (2024), so that application form is essential to apply for benefits. Thus, we must decide whether it is essential for VA to provide a paper application form or whether pointing a claimant to a public website to obtain forms satisfies VA's duty to furnish them.

20

VA's current practice, as illustrated in Mr. Ripley's case (and the treatment of Mrs. Murray and Ms. Butler), is to respond to a prospective claimant's expression of an intent to apply for veterans benefits with a form letter that points the claimant to a website "[t]o locate the appropriate form(s)." Amended Pet., Exh. H-2. The Secretary emphasizes the efficiency achieved by transforming claims processing to digital services and technologies based on electronic claims submitted through the eBenefits portal. Secretary's Resp. to Amended Pet. at 35-36; *see* OA at 24:47-27:03. The Secretary argues that "any method of delivery requires some effort on the part of a veteran. Even when documents are mailed they are not delivered with the envelope open, with the documents placed on top and put on someone's table." OA at 27:59-28:15. The Secretary argues that "this minimal action requested of [prospective claimants]"—going to a website to locate forms[18]—does not "impose[] such a significant or unreasonable burden on them that it constitutes a violation of [the Secretary's] obligation to furnish them with application forms." Secretary's Resp. to Amended Pet. at 18. The Court is unconvinced. The Secretary's interpretation is inconsonant with the plain meaning of "furnish." Telling claimants where to find forms is not furnishing forms. The Secretary is affording access to the application forms or making them available for claimants to obtain, but he is not furnishing them. Both title 38 of the United States Code and the Secretary's regulations demonstrate the difference.

As an initial matter, as the Secretary has acknowledged, the phrase "shall furnish" in section 5102 specifies that he has a mandatory obligation to furnish application forms to prospective claimants. *See* Secretary's Resp. to Amended Pet. at 18; *Quinn v. Wilkie*, 31 Vet.App. 284, 291 (2019) ("Absent a textual reason to believe otherwise, something not present here, the word 'shall' leaves no room for discretion."). In amending its regulations to require that all claims be filed on prescribed forms, VA promised that, "as statutorily required pursuant to 38 U.S.C. 5102, VA will furnish the claimant with the appropriate application form(s)."[19] Standard Claims and Appeals Forms, 79 Fed. Reg. 57,660, 57,667 (Sep. 25, 2014). VA added that

> upon receipt of any request for an application, to include email transmissions, VA will provide the appropriate form or application pursuant to current § 3.150 and will provide claimants with the information necessary to complete it. We note, however, that an email requesting benefits, without more, is a non-standard narrative submission. While such a submission clearly triggers VA's obligation to send the correct form, it does not on its own serve as an effective date placeholder.

*Id.* The petitioner and proposed class seek to have VA fulfill its acknowledged statutory and regulatory obligation to send the correct form in response to an ITF or RFA.

Section 5102 is one of several sections of title 38 that require the Secretary or the claimant to furnish something. *See, e.g.,* 38 U.S.C. § 109(c)(2) ("[A]pplicant[s] for [benefits for discharged members of allied forces] shall furnish an authenticated certification . . . ."); 38 U.S.C. § 317 ("The

---

[18] At oral argument, the Secretary suggested that "clicking a button on a computer is actually probably less onerous than going to a mailbox opening and sorting through . . . paper copies and then looking . . . for a pen." OA at 28:25-28:37.

[19] As a 2023 memorandum decision persuasively proclaimed, "VA unequivocally has a legal duty to provide an application for benefits upon receipt of an informal claim." *O'Banion v. McDonough*, No. 22-1090, 2023 WL 2761278, at *3 (Vet. App. Apr. 4, 2023) (mem. dec.), *appeal docketed sub nom. O'Banion v. Collins*, No. 23-2069 (Fed. Cir. June 26, 2023).

Secretary shall ensure that the Director [of the Center for Minority Veterans] is furnished sufficient resources . . . ."); 38 U.S.C. § 904 ("The Secretary shall furnish Department police officers with such weapons and related equipment as the Secretary determines to be necessary and appropriate."); 38 U.S.C. § 1710(a)(1) ("The Secretary . . . shall furnish hospital care and medical services which the Secretary determines to be needed—(A) to any veteran for a service-connected disability . . . .")[20]; 38 U.S.C. § 2301(a) ("The Secretary shall furnish a flag to drape the casket of [qualifying deceased veterans]."); 38 U.S.C. § 3034(e)(3) ("The Secretary shall furnish the forms described in paragraph (2) and other educational materials to educational institutions . . . ."); 38 U.S.C. § 3117(a)(1) ("A veteran with a service-connected disability rated at 10 percent or more who has participated in a vocational rehabilitation program . . . and who the Secretary has determined to be employable shall be furnished assistance in obtaining employment . . . ."); 38 U.S.C. § 3323(b)(3) ("The Secretary . . . shall furnish the information and forms described in paragraph (2), and other educational materials on educational assistance under this chapter, to educational institutions, training establishments, military education personnel, and [others]."). These uses of "furnish" contemplate both provision and receipt. *See Heino*, 24 Vet.App. at 374. And Congress knows how to make action by the Secretary to furnish something mandatory or permissive. There are sections of title 38 that provide that the Secretary "may furnish" something, thereby affording him discretion. *See, e.g.,* 38 U.S.C. § 703(a) ("The Secretary may furnish and launder such wearing apparel as may be prescribed for employees in the performance of their official duties."); 38 U.S.C. § 1707(b) ("The Secretary may furnish sensori-neural aids . . . ."); 38 U.S.C. § 1708(a) ("The Secretary may furnish . . . temporary lodging . . . ."). Section 5102 mandates that the Secretary furnish application forms and instructions free of all expense.

Congress also knows how to require only that VA make information available on a website. *See, e.g.,* Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, sec. 3(e), 131 Stat. 1105, 1119 (Aug. 23, 2017) ("The Secretary shall make available to the public on an Internet website of the Department of Veterans Affairs—(1) the plan required by subsection (a) [for processing appeals of decisions on legacy claims and implementing the new appeals system] . . . .") (set out as a note to 38 U.S.C. § 5101 (2022) (Processing Legacy Appeals and Supporting the New Appeals System, sec. 3(e))); 38 U.S.C. § 3317(e) ("The Secretary shall make available on the Internet website of the Department available to the public a current list of the colleges and universities participating in the program under this section."). In short, the words Congress chose in section 5102 speak for themselves and control the outcome here. And VA has demonstrated that it also knows how to limit its obligation regarding forms and instructions to make them available when that is what it means. *See* 38 C.F.R. § 18.12 (2024) ("[R]esponsible agency officials shall issue and promptly make available to interested persons forms and detailed instructions and procedures for effectuating this part."). VA has also demonstrated that it knows when electronic transmission of forms is adequate. *See* 38 C.F.R. § 19.21 (2024) ("If a claimant has established an online benefits account with VA, or has designated an email address for the purpose of receiving communications from VA, VA may provide an appeal form . . . electronically.").

---

[20] *See Zimick v. West*, 11 Vet.App. 45, 50 (1998) (holding that a statute providing that the Secretary "shall furnish hospital care" plainly establishes a mandatory obligation to provide hospital care).

In addition, section 5102's mandate that forms be furnished to prospective class members "free of all expense" can only be fulfilled if the Secretary mails or otherwise delivers application forms—at least to those who do not already have home access to the internet and the equipment and ability to use it. Gaining access to the internet, at home or in a public facility such as a library, will necessarily incur some type of cost to a claimant—whether it be paying for home internet service and personal electronic devices or expenses to travel to a public facility that provides access to the internet. Similarly, the Secretary's assertion at oral argument that individuals can travel to a regional office (RO) within their state to receive paper copies of applications, OA at 55:49-55:54 ("[T]hey can walk into an RO and get a paper application on that spot."), fails to account for the distance between ROs and claimants and their costs to travel. Therefore, the Secretary's default practice forces veterans to incur a cost, and that is statutorily prohibited.

The Secretary defiantly asserts that "how he carries out his obligation to furnish application forms is not a matter over which . . . this Court [has] any say." Secretary's Resp. to Amended Pet. at 34-35. However, the sole case he cites as support for this assertion, *Ramsey v. Nicholson*, 20 Vet.App. 16, 27 (2006), says nothing of the sort. First, the Secretary's page citation is wrong, and the actual passages contain significant qualifiers the Secretary omitted: *Ramsey* concerns the Board's ability to stay cases on its docket, notes that VA's authority to stay matters is governed by caselaw reflecting the Court's de novo interpretation of statutes, 20 Vet.App. at 28-29, and expresses the Court's reluctance to dictate "where Congress has chosen not to do so." 20 Vet.App. at 36. More pointedly, *Ramsey* highlights the primacy of the Court's decisions and holds that for the Secretary to unilaterally stay the effect of a Court decision based upon "disagreement with this Court's interpretation of a statute or regulation is . . . to operate outside the law." *Id.* at 38. So, *Ramsey* is aligned with the Court's statutory authority and duty to decide all relevant questions of law, interpret statutory and regulatory provisions, compel action of the Secretary unlawfully withheld, and hold unlawful and set aside decisions by the Secretary found to be an abuse of discretion or otherwise not in accordance with law. 38 U.S.C. § 7261(a); *see, e.g., Ray v. Wilkie*, 31 Vet.App. 58, 74-75 (2019) (holding that the Court retains the authority to interpret VA regulations and noting that "judicial interpretation has been a cornerstone of the American legal system since the foundation of the Republic"); THE FEDERALIST NO. 78 (Alexander Hamilton) ("The interpretation of the laws is the proper and peculiar province of the courts."). Fortunately, there is no real separation of powers problem here; at oral argument, the Secretary said he was not arguing that his authority to make policy decisions that promote efficiency extends to decisions that contravene the law. OA at 35:36-36:01.

### 2. Notice

The Secretary relies on his overall practice for providing forms, which he describes as "designed to ensure that all prospective claimants are ultimately provided with application forms in a form and manner suitable to their needs and preferences." Secretary's Resp. to Amended Pet. at 28. He acknowledges that the template letter he sends in response to ITFs and RFAs doesn't say anything about getting paper forms, but he contends that the petition is not based on inadequacy of notice. OA at 33:03-33:32. While it is true that the petition advances no argument denominated "inadequacy of notice," the petitioner has repeatedly argued that VA's template letter is inadequate. Indeed, the stated genesis of the petition is that, "[i]nstead of furnishing applications to claimants, the Secretary sends only a template letter describing how to locate the forms on VA's website,

23

requiring a computer and Internet access," and this "practice does not comply with the law and leaves claimants like [the petitioner] without those forms . . . , inflict[ing] real harm on claimants." Pet. at 1. The petitioner contends that the Secretary's policy and practice of responding to ITFs and RFAs by "sending template letters rather than furnishing claimants with the proper application forms" is set out in VA's *Adjudication Procedures Manual, M21-1*, and has been the instituted practice "since the relevant subsections of 38 C.F.R. § 3.155 took effect in 2015." *Id.* at 9. The petitioner argues that the template letters contain boilerplate language referring claimants to VA's website to locate appropriate forms and warn claimants that "[VA] will take no further action until [it] receive[s their] completed application[s]." *Id.* at 9, 20. More pointedly, the original petitioner asserted that the template letter is "deficient" in that "[t]he template letter did not tell [p]etitioner that VA would send her an application form if she asked for it a second time and as a consequence, she would have no reasonable expectation that a second request would produce a different result." Petitioner's July 2021 Reply at 2, 22. A notice is supposed to notify, that is "to inform (a person or group) in writing." *Notify*, BLACK'S LAW DICTIONARY 1280. The petitioner's attack on the inadequacy of the Secretary's template letters informing the petitioner that he can get forms on VA's website most certainly has made "inadequacy of notice" one basis of the petition.

Before contending (at oral argument) that the petitioner had not challenged the adequacy of notice, the Secretary had argued against that challenge (in briefing) by highlighting that VA's form letter "specifically advises the prospective claimant that they should contact the agency if they have any questions or need assistance with their claim, and provides ways to reach the agency." Secretary's Resp. at 31. The Secretary said that if a prospective claimant contacts VA and "indicates that they are unable to access or complete an application online, the agency representative will ensure that the appropriate application form is delivered to them by other means such as fax, email, or traditional mail." *Id.* And the Secretary provided a heavily redacted copy of his internal guidance for VA public contact representatives, who "must direct the claimant to file online through VA.gov, instruct him/her on how to obtain the form from www.va.gov, offer to email the form, or offer to mail the form (or provide form if in person)." Secretary's Resp. at 7-8, Attachment H. The Secretary argues that the template letter's invitation to those who submitted an ITF or RFA to contact VA with any questions or requests for assistance, along with the letter's direction to eBenefits and a downloadable application on VA's website, together satisfy the duty to furnish the application form. Secretary's Resp. at 30. The Secretary says that "[i]f a claimant reaches out to the agency and indicates a need for a paper application form, one will be provided." Secretary's Resp. to Amended Pet. at 9.

However, there are some problems to account for. First, the template letter VA sent Mr. Ripley appears to have omitted the information regarding contacting VA with any questions or need for assistance. Amended Pet., Exh. H-2. And the template letters VA sent Mrs. Murray and Ms. Butler said nothing about contacting VA to obtain a paper application form, only that "if you have any questions or need assistance with filing your claim, you may contact [VA] by telephone, e-mail, or letter." Amended Pet., Exhs. F-2, I-2. None of the three template letters said anything about obtaining an application from anywhere other than www.va.gov/vaforms or by any means other than through that website. None of the letters said a claimant could get a paper form by calling VA and asking for one. VA warned that it would take no action until it received a completed application and then specified only one way to get the required form—by visiting the website. The Secretary does not fulfill his affirmative obligation to furnish, free of all expense, the forms

24

necessary to apply for benefits by directing all claimants to a website. And the Secretary does not fulfill his affirmative obligation to furnish forms through his unexpressed willingness to provide them if a claimant happens to call and ask for them.

As he says, the Secretary "provide[s] a clearly lit path to improved quality and timeliness of service by encouraging claimants to submit their claims electronically." Secretary's Resp. at 6. The illumination reflects his belief "that the advantages of [VA's] Web-based paperless claims systems offer[s] claimants and/or their authorized representatives, as well as VA personnel, a faster, more convenient way of processing and adjudicating claims." 79 Fed. Reg. at 57,663. The dark path to a paper application—unmentioned in the template letters VA sends prospective claimants—is consonant with the Secretary's effort to limit such applications.[21] And VA's internal guidance tells its representatives to "direct the claimant to file online through VA.gov" and to "instruct [the claimant] on how to obtain the form from www.va.gov," but it leaves offering to mail the form as only an option—without any instruction to ask if a paper form is needed or desired. Secretary's Resp. to Amended Pet., App. H. In sum, the Secretary's overall practice does not fulfill his statutory obligation to furnish forms and instructions free of all expense.

### E. Standing

Standing to bring a federal action consists of three elements: "The [petitioner] must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Standing is determined as of the date the petition was filed. *Freund II*, 114 F.4th at 1377 n.4; *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1340 (11th Cir. 2014); *Standing to sue in federal court, generally*, 1 Cyc. of Fed. Proc. § 2:24 (3d ed. Jan. 2025 update) ("In determining the issue of standing, the court must look to the facts and circumstances as they existed when the suit was initiated."). At the time he became a petitioner, Mr. Ripley sent VA a form reflecting his intent to apply for compensation benefits, thereby triggering, pursuant to § 3.155(b), VA's obligation to furnish him an application form. VA received the ITF form and replied, referring him to a website to complete a benefits application rather than furnishing him the application form to submit. The petitioner had thereby suffered the very injury he alleges is common to the proposed class: "'being forced to assume the added burden of seeking out forms that the Secretary is required by law to provide and does not.'" Secretary's Resp. to Amended RCA at 43 (quoting Petitioner's Amended RCA at 11-12).

Contrary to the Secretary's contention at oral argument, the petitioner did allege that the Secretary's pro forma responses to ITFs and RFAs with standardized letters providing limited general information resulted in injury in the expenditure of resources to obtain forms. OA at 44:50-45:30. The Secretary argued that there is no harm until there is a loss of benefits. OA at 45:36-45:47. From the outset, the petitioner argued that the Secretary's failure to furnish paper forms

---

[21] In addition to the omission from his template letters of any indication to a prospective claimant that a paper application form will be provided if needed or desired, the Secretary's litigation position that "[a]ny claimant who expresses a need or desire for a paper application is provided with one," Secretary's Resp. to Pet. at 3, is undermined by his hyperbolic accusation that the original petitioner—who was 88 years old, suffering from paralysis following a stroke, and unable to use a computer or drive—was not interested in access to the forms needed to apply for benefits but was "seeking control and dominion over the Secretary's policies and procedures." *Id.* at 5.

"unlawfully shift[ed] his burden to the claimants." Pet. at 2.[22] The RCA avers that, "[i]nstead of mailing or otherwise delivering to claimants paper copies of the forms, the Secretary's policy and practice is to send claimants a template letter telling them where they can find those forms online," and the Secretary thereby "shifts the burden of obtaining forms to claimants, leaving those seeking VA's care without a means to obtain the assistance that they need." RCA at 1. The petitioner further contends that "[t]he Secretary's unlawful withholding of paper forms inflicts real harm. Claimants may be unable to access application forms at all, or at best are forced to expend additional time and resources to locate the forms that should have been provided to them directly." Pet. at 19. Timing, resources, and burdens are pivotal in a system that depends on inducing agency action. *See, e.g.,* 38 U.S.C. § 5110(a)(1) ("[T]he effective date of an award based on [a claim generally] . . . shall not be earlier than the date of receipt of application therefor."); 38 C.F.R. §§ 3.155(d)(1), 3.160(a) (2024) (together requiring a complete claim submitted on "an application form prescribed by the Secretary"). In the amended RCA, the petitioner argued that, even if some proposed class members

> are eventually able to locate and submit a completed application notwithstanding the Secretary's failure to furnish them with the required forms, they still suffer a common injury by being forced to assume the added burden of seeking out forms that the Secretary is required by law to provide and does not.

Amended RCA at 11-12.[23] The Secretary cannot "impose[] a greater burden on a claimant than the law does." *English v. Wilkie*, 30 Vet.App. 347, 353 (2018). The veteran must allege only a "perceptible harm" or "an identifiable trifle" of harm to defeat a motion to dismiss, and only show such harm to prevail. *United States v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, 689-90 n.14 (1973). Standing is not limited "to those who have been 'significantly' affected by agency action." *Id.*

The dissent musters the Secretary's arguments for forgoing furnishing forms in favor of forcing veterans to ferret them out. *Post* at . . . .[24] But "[a]ttorney argument is not evidence." *Icon Health and Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017). The Secretary's argument "that, to accept [the petitioner's] contention that he was injured, the Court would have to accept that the Secretary was required to immediately provide a paper application," *see post* at . . . ,[25] rests on the false premise—belied by the Secretary's responsive letter saying he would take no action, and by his treatment of Mrs. Murray—that a form requester could reasonably expect to ever be sent a paper application. *See* Petitioner's Amended RCA, Exh. H-2. And the Secretary's supposed policy of offering to mail forms is part of the illusion, unexpressed to any of Mrs. Murray, Mr. Ripley, or Ms. Butler—with not one word to any one of them in the Secretary's responses to

---

[22] In his response to the petition, the Secretary specifically quoted this argument by the petitioner. Secretary's Resp. to Pet. at 19 n.32.

[23] In his response to the amended RCA, the Secretary highlighted the petitioner's argument that even those who are able to locate and submit a completed claim "'still suffer a common injury by being forced to assume the added burden of seeking out forms that the Secretary is required by law to provide and dos not.'" Secretary's Resp. to Amended RCA at 43 (quoting Petitioner's Amended RCA at 11-12).

[24] This citation referred to a section of the dissent in the draft panel order but now refers to pages 2-10 of the majority opinion.

[25] This citation referred to a section of the dissent in the draft panel order but now refers to page 7 of the majority opinion..

26

their requests for application forms—that forms could be obtained in any way other than through the website. In short, there are no facts that show that Mr. Ripley could have obtained a paper application from a veterans service organization (VSO) or by calling VA, and especially no facts showing that any such availability was communicated to him. Moreover, even if there were facts showing that Mr. Ripley had other ways to obtain an application form, such facts would "not negate the fact that he is denied *this* [statutorily prescribed] avenue to do so or excuse the extra burdens imposed by those alternate methods." *Rosinski*, 31 Vet.App. at 9. Mr. Ripley requested an application form by mailing VA an ITF, but VA did not furnish him an application form or even tell him how he could find a form except via VA's website. No form, no notice, and thus no meaningful access to veterans benefits until after he sued. Because that is an injury "traceable to the VA's conduct and 'likely to be redressed by a favorable judicial decision,' at the time of filing [he] had standing." *Freund II*, 114 F.4th at 1377 n.4 (quoting *Best Med. Int'l, Inc. v. Elekta Inc.*, 46 F.4th 1346, 1352 (Fed. Cir. 2022)).

After the amended petition was filed, the Secretary mailed Mr. Ripley a paper application. Secretary's May 24, 2022, Motion to Dismiss at 3-4. But "[i]t is the doctrine of mootness, not standing, that addresses whether 'an intervening circumstance [has] deprive[d] the [petitioner] of a personal stake in the outcome of the lawsuit.'" *EPA*, 597 U.S. at 719 (quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)).

### F. Mootness

This Court has adopted the Article III case-or-controversy requirement as a basis for exercising our exclusive jurisdiction in veterans benefits cases, "including the requirement that a case be dismissed when it becomes moot during the course of the appeal." *Cardona v. Shinseki*, 26 Vet.App. 472, 474 (2014); *see Bond v. Derwinski*, 2 Vet.App. 376, 377 (1992) ("[W]hen a once live case or controversy becomes moot, the Court lacks jurisdiction . . . [and the] case [is] dismissed."); *Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990) (adopting "the jurisdictional restrictions of the Article III case or controversy rubric," finding that a petition is moot, and holding that "the Court no longer has jurisdiction and the petition is dismissed"). "A case or controversy ceases to exist, and a case becomes moot, 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Godsey*, 31 Vet.App. at 218 (quoting *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979)).

VA "bears the burden to establish that a once-live case has become moot." *EPA*, 597 U.S. at 719. Here, VA offers only that it sent the petitioner an application form after it received the amended petition with his declaration—"in response to [his] stated need or desire for a paper application." Secretary's Motion to Dismiss at 14. A party claiming that its voluntary compliance moots a case bears a heavy burden "of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). VA has not even attempted to meet that burden. There has been no change in VA's policy or practice or any indication that change is contemplated. When there has been no voluntary cessation of the challenged conduct, the appeal is not mooted. *Cardona*, 26 Vet.App. at 478. VA's position is that "nothing prevents the Secretary from furnishing applications by making them available electronically or online, and providing physical copies only to those who indicate a need or desire for them," and VA insists that its decision to proceed that

27

way "is an exclusively managerial decision that falls squarely within [the Secretary's] role and function as the executive head of the Department." Secretary's Resp. to Amended Pet. at 15. So VA promises more of the same, and the record evidence here shows that VA does not even tell prospective claimants that it will send them actual application forms upon request—only that they must submit a specified form and it can be located on VA's website. *See* Amended Pet., Exh. H. VA's repetition of the challenged conduct is virtually certain since VA's conduct reflects its ongoing interpretation of the nature and extent of its obligation to furnish application forms. The Court does not dismiss a case as moot when VA indicates that it will, without judicial intervention, continue the allegedly wrongful behavior it vigorously defends as lawful and a management prerogative. *See EPA*, 597 U.S. at 720; *Freund II*, 114 F.4th at 1379 n.7 ("To the extent that the Secretary claims that the case is moot because the VA has done everything possible to provide a remedy, . . . this argument is specious. A case does not become moot because the defendant contends that it has done everything possible to rectify unlawful conduct.").

In addition, a class action claim does not become moot because the named petitioner's controversy was quieted if other persons similarly situated will continue to be subject to challenged conduct that is otherwise effectively unreviewable because no petitioner possesses a personal stake in the case long enough for the litigation to run its course. *See Monk I*, 855 F.3d at 1317-18 (finding a petitioner's request for class action not moot as capable of repetition, yet evading review). Because a certified class "'acquires a legal status separate from the interest asserted by the named [petitioner],' . . . when the claim of the named [petitioner] becomes moot after class certification, a 'live controversy may continue to exist' based on the ongoing interests of the remaining unnamed class members." *United States v. Sanchez-Gomez*, 584 U.S. 381, 387-88 (2018) (quoting *Genesis Healthcare Corp.*, 569 U.S. at 74). To ensure that systemic harm imposed by an entity does not go unaddressed simply because the harm to a specific individual has been corrected, "there is a limited exception to the requirement that a named [petitioner] with a live claim exist at the time of class certification. The exception applies when the pace of litigation and the inherently transitory nature of the claims at issue conspire to make that requirement difficult to fulfill." *Sanchez-Gomez*, 584 U.S. at 388. "Some claims are so inherently transitory that the [Court] will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980) (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)).[26] "In such cases, the 'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution." *County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) (citing *Swisher v. Brady*, 438 U.S. 204, 213–214, n.11 (1978)).

The Federal Circuit recently applied the inherently transitory exception in *Freund II*, where the class claimants' mandamus petition contended "that VA had improperly truncated the appeals process," and thus frustrated appellate review, when an electronic database used by VA to manage appeals had erroneously deactivated the claimants' appeals. *Freund II*, 114 F.4th at 1374-75. When it received the petition, VA agreed that the appeals had been improperly closed; VA reactivated them and argued that the case was therefore moot. *Id.* at 1375-76. The Federal Circuit disagreed, holding that the inherently transitory exception applied based on VA's practice to immediately reactivate an appeal upon learning that it was mistakenly closed. *Id.* at 1380. The Secretary's

---

[26] *Geraghty* involved eligibility for parole. 445 U.S. at 392-94. *Pugh* involved the procedure for pretrial detention of a criminal defendant. 420 U.S. at 105-12.

28

prompt attention to the problem demonstrated that the Court could not have been expected to rule on a motion for class certification within that period. *Id.* at 1380-81. So it is in this case. Mr. Ripley submitted his ITF in October 2021, received VA's November 2, 2021, response referring him to VA's website to obtain forms, submitted his November 17, 2021, affidavit and became a petitioner, and then was mailed a paper application form by VA on December 16, 2021. Secretary's Resp. to Amended Pet. at 11 and Attachment G.[27] The fact that the Court could not determine whether to certify a class until after the named petitioner was furnished an application does not deprive the Court of jurisdiction because "the harms alleged are transitory enough to elude review." *Nielsen v. Preap*, 586 U.S. 392, 403 (2019). As the petitioner argues, "you should not have to file a lawsuit in order to get the paper application." OA at 1:09:40-51. And VA sending a paper application upon receipt of a petitioner's affidavit in an amended petition does not render the case moot.

"Permitting class actions . . . help[s] prevent the VA from mooting claims scheduled for precedential review." *Monk I*, 855 F.3d at 1321.[28] So the Court now turns to whether certification of a class is warranted here.

## III. CLASS CERTIFICATION

### A. Class Definition

As he has refined it over the course of the proceedings, the petitioner proposes that the class include all claimants or prospective claimants (1) who have submitted or submit to the Secretary, by paper, an ITF or an RFA; (2) to whom the Secretary has not mailed or otherwise delivered a paper copy of each appropriate application form; and (3) from whom the Secretary has not received a corresponding VA application form. Amended Petition at 3; RCA at 7-8; Amended RCA at 9; Petitioner's Reply at 3; OA at 2:29-2:53. The petitioner has highlighted that "eBenefits applicants who already have accessed the application form are not included in the [c]lass." Petitioner's Reply at 4 n.1.

In the context of appeals, the Court's jurisdictional statute, section 7252(a), limits class members to claimants who have received Board decisions. *Skaar v. McDonough* (*Skaar II*), 48 F.4th 1323, 1332-35 (Fed. Cir. 2022), *vacating Skaar v. Wilkie* (*Skaar I*), 32 Vet.App. 156 (2019) (en banc). Here, as previously explained, the Court's authority stands on the AWA and section 7261(a)(2), which empowers the Court to "compel action of the Secretary unlawfully withheld or unreasonably delayed," and is exercised to remove an obstacle to the Court's prospective jurisdiction. *Freund II*, 114 F.4th at 1376. Each class member emerges by initiating proceedings under § 3.155 via a paper ITF or RFA. *See Wolfe II*, 28 F.4th at 1359; *Bolds v. McDonough*, 37 Vet.App. 359, 362 (2024) ("[T]he current appeal originated . . . when [the veteran] submitted an intent to file a claim."). The Court will certify the proposed class, as refined, so class members have the ready access to VA's adjudicative process Congress promised in instructing the Secretary

---

[27] If the Secretary sent Mr. Ripley a paper application to moot his petition before judicial resolution, the picking off exception to mootness would apply. *See Freund II*, 114 F.4th at 1380 n.8; *Godsey*, 31 Vet.App. at 219.

[28] *Godsey* cited *Monk I* as "noting the Secretary's practice of mooting cases scheduled for precedential decision." *Godsey*, 31 Vet.App. at 219 (citing *Monk I*, 855 F.3d at 1321).

to furnish claimants, free of all expense, all instructions and forms necessary to apply for benefits. *See* 38 U.S.C. § 5102(a).

## B. Requirements for Class Certification

In November 2020, the Court promulgated rules for requesting class action and acting on such requests. *Beaudette v. McDonough*, 34 Vet.App. 95, 106 n.3 (2021), *aff'd*, 93 F.4th 1361 (Fed. Cir. 2024); U.S. Vet. App. R. 22, 23. The Court's Rule 23 aligns with Rule 23 of the Federal Rules of Civil Procedure. Our Rule 23 sets the following five prerequisites for class certification:

(1) the class is so numerous that consolidating individual actions in the Court is impracticable;
(2) there are questions of law or fact common to the class;
(3) the legal issue or issues being raised by the representative parties on the merits are typical of the legal issues that could be raised by the class;
(4) the representative parties will fairly and adequately protect the interests of the class; and
(5) the Secretary . . . has acted or failed to act on grounds that apply generally to the class, so that final injunctive or other appropriate relief is appropriate respecting the class as whole.

U.S. Vet. App. R. 23(a); *see Beaudette*, 34 Vet.App. at 105-06.

### 1. Numerosity

The petitioner argues that he "does not and cannot know the exact number of similarly situated individuals, [but] that information should be readily available to the Secretary," and he argues that reasonable inferences from available facts suggest that there are thousands of such individuals. Amended RCA at 10-11. The petitioner relies on statistics provided by the Secretary to estimate that nearly 1,400 veterans and their survivors communicated their intent to file a claim in a manner other than electronically and then did not complete an application.[29] Amended RCA at 11.

---

[29] The Secretary provided the number of ITFs VA received in each of 2018, 2019, and 2020, Secretary's Resp. at 6 n.11, and the approximate percentage of those ITFs that were received electronically each year, Secretary's Resp. at 41 n.68. The Secretary specified that the percentages were for fiscal years, but he did not indicate whether the numbers of ITFs received were by calendar year or fiscal year. If the Secretary's data matches up, it would yield the following: (1) in 2018, 1,084,931 ITFs received, 52% electronically, equaling about 564,164; (2) in 2019, 1,173,824 ITFs received, 57% electronically, equaling about 669,080; and (3) in 2020, 1,024,236 ITFs received, 64% electronically, equaling about 655,511. Using the Secretary's numbers, the total number of ITFs he received in 2018, 2019, and 2020 was 3,282,991. Using the percentages the Secretary provided, the total number filed electronically over that period was about 1,888,755, leaving 1,394,236 communicated other than electronically. The petitioner appears to have averaged the percentages for each year to arrive at a total of about 58% filed electronically and 42% received by other means, totaling about 1,378,856. Amended RCA at 11. Then the petitioner says that "[e]ven if 99.9% of those filers completed an application (likely a very conservative assumption), that leaves nearly 1,400 filers who did not, and who thus are current members of the proposed Class."

The Secretary responds with another data point: "Between 2018 and 2020, the Secretary received 3,282,991 [ITFs], of which, 1,033,0466[30] (or approximately 31%) were not followed up with a completed claim." Secretary's Resp. at 40 n.67. But the Secretary argues that the number of ITFs that expire with no claim having been completed "sheds no light on the number of claimants who meet the class definition proposed by Petitioner or who potentially could have suffered an actual and cognizable injury due to the lack of a paper application," and he argues that the petitioner "provides a vastly exaggerated view of class membership" because it includes claimants who already had an application, downloaded and printed an application, and received a paper application "but nevertheless did not complete their applications." Secretary's Resp. at 40.

As the parties acknowledge, "[n]umerosity need not be proven exactly." *Skaar I*, 32 Vet.App. at 191. Though courts generally find that less than 21 class members are not enough and that 40 or more satisfy the numerosity requirement, "'[t]here is no minimum number of members needed for a suit to proceed as a class action.'" *Id*. (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012)). Importantly, when injunctive relief is requested—as is the case here—the numerosity requirement is relaxed. *Id*. (citing *Sueoka v. United States*, 101 F. App'x 649, 653 (9th Cir. 2004)). Moreover, because it often is the case that the party opposing the class possesses the information necessary to ascertain the scope of the alleged harm, it is "'permissible for a plaintiff to make reasonable inferences drawn from available facts'" regarding the number of individuals affected. *Id*. (quoting *Violette v. P.A. Days, Inc.*, 214 F.R.D. 207, 213 (S.D. Ohio 2003) ("[A]n information monopoly [by the party opposing the class] will not stand in the way of persons seeking relief.")).

That last point covers the situation here—only the Secretary has the information to determine the numbers (and names) of people from whom he has received a paper ITF or a paper RFA, those to whom he has not mailed or otherwise delivered a paper copy of each appropriate application form, and those from whom he has not received a corresponding VA application form. With this information monopoly, the Secretary's contention that "it is impossible to know who falls within the class definition. . . . until after the litigation ends," Secretary's Resp. to Amended Pet. at 41, is misplaced. Though he doesn't expressly say so, the Secretary seems to be contending that the class is not ascertainable. "'[A]scertainability requires only that the court be able to identify class members at some stage of the proceeding.'" *Freund II*, 114 F.4th at 1378 (quoting William B. Rubenstein, 1 Newberg and Rubenstein on Class Actions § 3:3 (6th ed. 2024)). The class is ascertainable if it is defined by objective criteria. *Id*. In this case, as in *Freund II*, the objective criteria are "certainly capable of being determined, even if it is not presently known which claimants will qualify for the class." *Freund II*, 114 F.4th at 1378. And the Federal Circuit "agree[s] with the majority of circuits that there is no basis for finding a lack of ascertainability because it is difficult to identify the class members." *Id*. Here, the Secretary knows and will know who submits ITFs and who submits RFAs, who he sends a paper application to, and who he receives a corresponding application from, and thus he can readily identify the class members.

Moreover, the petitioner's estimate of 1,400 class members reflects reasonable inferences drawn from the available facts. The Secretary incorrectly characterizes the petitioner's estimate as

---

[30] There is an extra digit in the Secretary's number of claimants who filed an ITF but did not follow up with a claim, but whether the actual number was 1,033,046, 1,033,466, or 1,033,066, the percentage is approximately 31.

based on 1% of those who submitted ITFs, Secretary's Resp. at 40, but it is actually based on .1% (.001). Amended RCA at 11. The Secretary also points to additional data that supports the petitioner's numerosity contention: If the percentage of individuals who did not communicate their ITF electronically is no higher than the percentage of individuals who did submit their ITF electronically, the class estimate would be 427,445 (31% of 1,378,856 non-efilers). What's more, data from the 2016 American Community Survey prepared by the National Center for Veterans Analysis and Statistics in 2018 shows that only 78.3% of veterans have computers, and only 79.9% of veterans have internet access. Secretary's Resp. to Amended Petition and RCA at 33 n.60 (citing U.S. DEP'T OF VETERANS AFFS., PROFILE OF VETERANS: INTERNET USE DEEP DIVE, DATA FROM THE 2016 AMERICAN COMMUNITY SURVEY, https://www.va.gov/vetdata/docs/SpecialReports/ Profile_of_Veterans_Internet_Use_Deep_Dive.pdf). And the percentages of veterans with computers, internet access, and even smartphones are lower for older veterans and substantially lower for veterans whose education level is high school or less and for veterans who are in poverty. *Id.* This data obviously means that at least 20% of veterans do not have internet access to use eBenefits and apply online or download an application online.

In short, the Secretary's argument that "it is reasonably possible that there are no claimants who satisfy the class requirements," Secretary's Resp. at 41, rings hollow. Based on reasonable inferences from the data of record, it is clear that the size of the proposed class satisfies the numerosity standard.

### 2. Commonality

On the issue of commonality, the Court must consider whether the members of the proposed class share a common question of law or fact. U.S. VET. APP. R. 23(a)(2). "The existence of even one such question is sufficient to satisfy the Rule 23(a)(2) commonality requirement." *Wolfe I*, 32 Vet.App. at 28; *Godsey*, 31 Vet.App. at 221. Commonality turns on whether "the class members have suffered the same injury" and advance a "common contention . . . [that] is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). It is particularly important that the common contention is able to lead to a common answer that resolves an issue central to that contention. *Id.* "Factual and legal differences among class members' claims will prove fatal to commonality when those differences 'have the potential to impede the generation of common answers' to the questions proposed by the class." *Godsey*, 31 Vet. App. at 221 (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 350). However, "'[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.'" *Skaar I*, 32 Vet.App. at 192 (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)).

The parties disagree on whether the proposed class satisfies the commonality requirement. The Secretary argues that the petitioner cannot possibly establish commonality because the class cannot be identified until the action is resolved, that answering the petitioner's asserted common question could not possibly resolve the litigation, and that the consequences of class members not receiving paper applications will vary. Secretary's Resp. to Amended Pet. at 45. The petitioner identifies the common question as "whether the Secretary's obligation to 'furnish' claimants with the appropriate application forms . . . requires the Secretary to deliver those forms to members of the proposed Class in a manner reasonably likely to be received." Amended RCA at 12. And the

32

common injury, the petitioner says, is that "the Secretary's failure to 'furnish' application forms as required by statute and regulations deprived proposed Class members the benefit of a mandatory facilitating step in the claims application process." *Id.* at 14.

The Secretary fails to appreciate that the Court's analysis of Rule 23's requirements frequently entails some overlap with the merits of the petitioner's claim because "'the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the [petitioner's] cause of action.'" *Wal-Mart Stores, Inc.*, 564 U.S. at 351 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)); *see Godsey*, 31 Vet.App. at 222. And the common answer to the common question need not alone dispose of class members' benefits claims. *See Wolfe I*, 32 Vet.App. at 28. When petitioners are challenging a common practice, "the commonality standard requires only that a putative class member share either the injury or the immediate threat of being subject to the injury . . . [and t]he differing degree and nature of the [petitioners'] injuries . . . do not preclude a finding of commonality." *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 60-61 (3d Cir. 1994). Here, "the putative class targets specific polices or practices that allegedly violate the law." *Monk II*, 30 Vet.App. at 181; *see Godsey*, 31 Vet.App. at 221.

The meaning of the Secretary's statutory and regulatory obligation to furnish claimants with appropriate application forms—set forth in section 5102(a) and §§ 3.150, 3.155(a), and 3.155(b)—is a legal question that is common to all members of the proposed class and is capable of class-wide resolution. *See Beaudette*, 34 Vet.App. at 106. The putative class members' common contention is that the Secretary is required to furnish the necessary forms by delivering them to class members in a manner reasonably likely to be received—a contention capable of class-wide resolution in the form of a Court order requiring such delivery. *See Skaar I,* 32 Vet.App. at 192; *Wolfe I*, 32 Vet.App. at 28. In other words, "there is a common answer to a common question here." *Freund II*, 114 F.4th at 1377. And the common injury is the lack of forms that are required to obtain benefits, which may deprive the class member of benefits, delay the award of benefits, or cost a class member without the wherewithal to obtain the forms in the absence of their furnishment.[31] Although the degree of harm may vary based upon the length of the delay and its impact on the claim and the cost to claimant to acquire forms not furnished, answering what section 5102(c) means by requiring the Secretary to "furnish . . . , free of all expense, all instructions and

---

[31] As VA informed Mr. Ripley, Mrs. Murray, and Ms. Butler, Amended Pet., Exhs. H-2, F-2, I-2, VA requires all claims to be submitted on a standardized form. *See Kriner v. McDonough*, 37 Vet.App. 41, 45 (2023); *Bailey*, 33 Vet.App. at 199; 38 C.F.R. §§ 3.155(d)(1), 3.160(a) (2024). An ITF must also be submitted on a prescribed form or in a "[s]aved electronic application," or "orally communicated to designated VA personnel and recorded in writing." 38 C.F.R. § 3.155(b)(1). These regulatory requirements are very strictly construed. *See Kriner*, 37 Vet.App. at 49-53. Generally, "the effective date of an evaluation and award of pension, compensation, or dependency and indemnity compensation based on an initial claim or supplemental claim will be the date of receipt of the claim or the date entitlement arose, whichever is later." 38 C.F.R. § 3.400 (2024); *see Wiker v. McDonough*, 36 Vet.App. 119, 124 (2023) ("By default, [the effective date for a claim] is the date of application or when the disability first arose, whichever is later."). So the date the prescribed claims form is received by VA is pivotal. "If VA receives a complete claim within 1 year of the filing of an intent to file a claim that meets the requirements of [§ 3.155(b)], it will be considered filed as of the date of receipt of the intent to file a claim." 38 C.F.R. § 3.155(d)(1)(ii); *see also* 38 C.F.R. § 3.155(b). VA has asserted that an RFA "clearly triggers VA's obligation to send the correct form, [but] it does not on its own serve as an effective date placeholder."79 Fed. Reg. at 57,667.

33

forms necessary to apply for [veterans] benefit[s]," *see* 38 C.F.R. §§ 3.150, 3.155, addresses the common injury to the proposed class members and establishes commonality.

### 3. Typicality

The test for typicality—whether the issues being raised by the petitioner are typical of the issues that could be raised by the class—concerns whether the harm suffered by the named petitioner is the same or similar as the harm suffered by the class as whole. U.S. Vet. App. R. 23(a)(3); *Wolfe I*, 32 Vet.App. at 29. "'Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.'" *Godsey*, 31 Vet.App. at 222 (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011)). A petitioner's contention is typical if it arises from the same practice or course of conduct that gives rise to the contention of other class members and if the contentions are based on the same legal theory. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). Importantly, "the requirement is permissive, such that 'representative claims are "typical" if they are reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

The typicality requirement is very similar to the commonality requirement, and the Supreme Court has previously stated that

> [t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

*Gen. Tel. Co. of the Sw.*, 457 U.S. at 157–58. The typicality prerequisite is a "'relatively low threshold.'" *Wolfe I*, 32 Vet.App. at 29 (quoting *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 82 (E.D.N.Y. 2007)). And that threshold is "easier to satisfy where classes seek injunctive relief." *Id.*; *see Skaar I*, 32 Vet.App. at 192–93.

Here, the Court concludes that, similar to commonality, the named petitioner's claim is typical of the claim for all class members because the Secretary's failure to furnish applications to the petitioner is the same burden all proposed class members must bear. *See Wolfe I*, 32 Vet.App. at 30; *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082. The petitioner argues that the Secretary's imposition of additional steps to receive a paper application contravenes the clear congressional mandate. Though the degree of the harm may vary, it is harm that is universally suffered by Mr. Ripley and the proposed class members. Pointedly, "[t]here's no obvious or alleged variation in claims between the petitioner and absent class members that strikes at the heart of the respective

34

causes of action." *Wolfe I*, 32 Vet.App. at 30. Petitioner Ripley's contentions share the same essential characteristics as the class contentions. *See id.*

### 4. Adequacy of Representation

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. '[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Wolfe I*, 32 Vet.App. at 30 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997)). "'Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members.'" *Wolfe I*, 32 Vet.App. at 30 (quoting *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011)). When the amended petition was filed, the petitioner had not been furnished an application form in a manner reasonably likely to be received by him; he had received only the template letter from VA directing him to a website, in accordance with VA's standard practice. "This is all that is required for representation. The petitioner[] suffered the same injury as the other proposed class members," and there is no indication of a conflict of interest that would prevent him from serving as class representative. *Freund II*, 114 F.4th at 1377; *see, e.g., J.D. v. Azar,* 925 F.3d 1291, 1313 (D.C. Cir. 2019) ("[T]he very existence of the inherently-transitory exception disproves any suggestion that the mootness of a plaintiff's claims necessarily demonstrates her inadequacy as a representative. . . . [because adequacy addresses the class representative's] ability to vigorously press the action." (citations omitted)); *Doe v. Wolf*, 424 F. Supp. 3d 1028, 1043–44 (S.D. Cal. 2020) (collecting cases) (holding that, for inherently transitory class action claims, the question is "whether adequacy was satisfied at the time of the complaint"). The Court is convinced that Mr. Ripley's counsel intends to vigorously pursue resolution of the class issue, despite the apparent resolution of Mr. Ripley's individual claim. Mr. Ripley "posses[ses] the same claim as the unnamed class members, his interest in VA complying with [its obligation to furnish application forms] is aligned with the class, and there is no indication he is unable to vigorously and competently advocate for the interests of the class." *Skaar I*, 32 Vet.App. at 194.

### 5. Generally Applicable Relief

The fifth prerequisite for class certification requires that "the Secretary or one or more official(s), agent(s), or employee(s) of [VA] has acted or failed to act on grounds that apply generally to the class." U.S. VET. APP. R. 23(a)(5). "[T]he central inquiry for the Court under Rule 23(a)(5) is whether the same injunctive or other relief is appropriate for both the representative and the members of the proposed class." *Furtick v. McDonough*, 34 Vet.App. 293, 298 (2021). The petitioner has "show[n] that both he and the class would benefit from the same injunctive or other appropriate relief," *id.* at 299, namely, "defining 'furnish' to require delivering application forms in a manner reasonably calculated to be received by claimants." Amended RCA at 20. The petition challenges the Secretary's failure to act—his failure to furnish forms—on grounds that apply generally to the class—noncompliance with statutory and regulatory requirements. The relief the petitioner requests "'affect[s] the entire class at once' and thus, is the exact kind of relief contemplated by Rule 23(a)(5)." *Beaudette*, 34 Vet.App. at 106 (quoting *Godsey*, 31 Vet.App. at 223).

**C. Other Class Action Issues**

*1. Adequacy of Class Counsel*

The Court's class action rules also mandate that we appoint class counsel in an order certifying a class. U.S. VET. APP. R. 23(f); *see Godsey*, 31 Vet.App. at 223-24. Rule 23(f)(1)(A) spells out the criteria the Court must consider in appointing class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class

U.S. VET. APP. R. 23(f)(1)(A). Rule 23(f)(1)(B) adds that the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

Here, the Court concludes that petitioner's counsel will adequately represent the class. Counsel has thus far proven to be an appropriate advocate for the class by diligently and competently identifying, investigating, and presenting claims for relief, including in various pleadings and at oral argument. Counsel has submitted affidavits reflecting considerable experience in handling class action cases and other complex litigation, as well as veterans law cases. *See* RCA at Exhs. E-F. Those affidavits also reflect that counsel is able and willing to commit whatever resources are necessary to adequately represent the class in this petition, and counsel's actions thus far confirm those assertions. *Id.* Petitioner's counsel has represented all three of the former and current petitioners throughout this litigation. Given the foregoing, the Court concludes that petitioner's counsel is adequate to represent the class, and therefore the Court will appoint said counsel as counsel for the class.

*2. Superiority*

Next, the Court considers whether "a decision granting relief on a class action basis would serve the interests of justice to a greater degree than would a precedential decision granting relief on a non-class action basis." U.S. VET. APP. R. 22(a)(3). In determining whether class certification is superior to a precedential decision, the factors the Court considers include

> whether: (i) 'the challenge is collateral to a claim for benefits; (ii) litigation of the challenge involves compiling a complex factual record; (iii) the appellate record is sufficiently developed to permit judicial review of the challenged conduct; and (iv) the putative class has alleged sufficient facts suggesting a need for remedial enforcement.'

*Beaudette*, 34 Vet.App. at 107 (quoting *Skaar I,* 32 Vet.App. at 197). "'No one of these factors is more or less important than the others, rather the Court must engage in a case-by-case balancing to determine whether class certification is appropriate.'" *Id.*

36

As for the initial factor, the class claim is collateral to a claim for benefits "because it challenges VA's adherence to a generally applicable [statute and] regulation[s]" and is not bound up with the merits of individual claims. *See Skaar I,* 32 Vet.App. at 198. The petition seeks only furnishment of application forms and instructions—items essential for veterans to request benefits from the Secretary, as a formal application is now required for claimants to obtain benefits—but the petition does not enter the thicket of VA's benefits determination. *See Skaar I,* 32 Vet.App. at 197. Regarding the second factor, this case—as in *Beaudette*—"presents a question of statutory interpretation and so a complex factual record is of limited use here." *Beaudette*, 34 Vet.App. at 107. That emphasizes the third factor: the record is sufficiently complete for adjudication, and the proposed class does not require additional factfinding. Addressing the fourth factor, "the requested relief is identical across the class"—a Court order to furnish application forms and instructions, free of expense, in a manner reasonably calculated to be received. And there are unique circumstances in this case warranting class-wide relief "through an orderly and consistent process amenable to judicial supervision." *Skaar I*, 32 Vet.App. at 199. Recall that survey data shows that at least 20% of veterans do not have internet access to use eBenefits and apply online or download an application online. *Supra* at 32. And the percentages of veterans with computers, internet access, and smartphones are lower for older veterans and substantially lower for veterans whose education level is high school or less and for veterans who are in poverty. *Id.* So older disabled veterans who are impoverished and seeking disability compensation are the most likely to be without internet access and thus unable to acquire and apply on the requisite form.

"Deciding this petition as a class empowers the Court to monitor and enforce its order more easily and efficiently than would be possible through the filing of individual petitions seeking compliance in each claimant's case." *Godsey*, 31 Vet.App. at 224. The Court can compel correction of a systemic error that stalls veterans at the starting gate without the forms required to even pursue the benefits to which they may be entitled. *See Monk I*, 855 F.3d at 1321. The Court can ensure that veterans are treated alike, with or without internet access, and furnished application forms and instructions. *See Wolfe I*, 32 Vet.App. at 33. Class relief is a disincentive to VA sustaining its silence regarding furnishing paper applications in favor of mooting petitions by those who bring them. *See Monk I*, 855 F.3d at 1321. Class relief enables any class member subjected to VA noncompliance to enforce that relief, and to do so expeditiously, without "[f]ull exhaustion of the agency review process, followed by an appeal to this Court." *Id.* And class relief more effectively informs veterans of their right to be furnished an application form and instructions. Without centralized relief, claimants who were not furnished forms and instructions when they submitted ITFs or RFAs "would be left to discover this opinion through extraordinary diligence or by chance." *Beaudette*, 34 Vet.App. at 107.

Indeed, were the Court to deny class certification, there is no way the Court could ensure that VA would find and inform each class member[32] of his or her right to a paper application form furnished by the Secretary. None of VA's template letters said anything about obtaining a paper application form or about obtaining an application from anywhere other than www.va.gov/vaforms or by any means other than through that website. VA warned that it would take no action until it

---

[32] The class members are "all claimants or prospective claimants (1) who have submitted or submit to the Secretary, by paper, an ITF or an RFA; (2) to whom the Secretary has not mailed or otherwise delivered a paper copy of each appropriate application form; and (3) from whom the Secretary has not received a corresponding VA application form."

received a completed application and then specified only one way to get the required form—by visiting the website. If the Secretary's current position that paper applications were and are available for the asking is correct, the template letters VA sent misleadingly indicated otherwise. So VA bears some responsibility in advising class members that it was required to furnish them application forms and instructions and would furnish paper forms and instructions if they wished. *See Beaudette*, 34 Vet.App. at 107.

When the Court issues a precedential decision, it binds VA in all pending and future claims, but claimants not party to that decision who may be subject to errors affecting their cases do not have any right to prompt remedial enforcement—they must fully exhaust Agency review of the Agency action before appealing to this Court. *Skaar I*, 32 Vet.App. at 198. "But where the facts suggest a need for prompt remedial enforcement, claimants may instead seek class certification." *Id.* Here, the special need for timely relief is the claimant's right to be furnished the application form required to pursue veterans benefits and to proceed promptly to set the soonest effective date for any benefits awarded. *See* 38 C.F.R. §§ 3.155, 3.400. For the foregoing reasons, the Court concludes that the petitioner has shown through a preponderance of the evidence that class action is a superior method for resolving this controversy, thereby overcoming the presumption that a precedential decision is adequate.

### D. Remedy

The "[p]etitioner does not dispute the benefits of electronic submission for some claimants" and acknowledges that "the Secretary is free to 'encourage and incentivize' the use of eBenefits for submitting and processing claims for benefits, so long as he does so consistent with the law." Petitioner's July 2021 Reply at 4. The Court likewise understands the benefits of the electronic claims process the Secretary emphasizes: "Electronic claims-submission is . . . more cost efficient than paper systems. It eliminates mail and scanning procedures and minimizes the risk of loss, destruction, misdelivery and misfiling inherent to paper systems." Secretary's Pet. Response at 2 n.4. And eBenefits allows veterans to "apply for benefits online; check on their compensation or pension claims status; upload [supporting] documents . . . order prescription medications; securely message their physician; . . . and order medical equipment." *Id.* However, as the petitioner argues, "the statute and regulations together recognize that modernization cannot come at the expense of elderly, indigent, and other claimants who lack Internet or computer access or skills."[33] Petitioner's Reply at 4.

The petitioner has shown that there is a lack of adequate alternative means to obtain the desired relief; the class has a clear and indisputable right to a writ of mandamus; and a writ is necessary. *Cheney*, 542 U.S. at 380-81; *Godsey*, 31 Vet.App. at 225. The petitioner has also shown

---

[33] And the petitioner offers suggestions for the Secretary to reduce the burden of fulfilling his requirement to furnish forms:

> the Secretary could modify the Intent to File form to allow claimants to expressly elect the manner in which they wish the Secretary to furnish their application (defaulting to mail if the claimant makes no election). Or the Secretary could adopt a policy by which he first mails a template letter similar to the one currently used that also advises that the Secretary will mail a paper copy of the application to those claimants who do not begin an application in eBenefits or otherwise indicate they have received the application form within a specified period of time.

*Id.* at 5.

that the class is likely to suffer irreparable harm in the absence of injunctive relief; the balance of equities tip in favor of the class; and injunctive relief is in the public interest. The nature of the impediment here—involving access to the application necessary to even initiate a claim—requires a writ to remedy because there is no mechanism to address such conduct within VA's adjudicatory system. Without such a mechanism, the issue could not be appealed to this Court. By statute and regulation, a prospective claimant's submission of an ITF or an RFA gives rise to the Secretary's obligation to furnish the claimant with appropriate application forms and instruction, free of all expense, in a manner reasonably likely to be received. The Secretary does not fulfill that obligation when he responds by referring the prospective claimant to a website and does not furnish any forms or instructions or even offer those who cannot access forms on a website another way to get them without expense, so a writ is necessary to remedy the Secretary's practice of unlawfully withholding paper applications from potential claimants. It wouldn't take much—just compliance with the law—to make this right for both resourceful and resourceless veterans and their families and survivors. The constitutional right of access to the VA benefits system, *Taylor*, 71 F.4th at 934, is exercised by submitting a form that Congress requires the Secretary to furnish. 38 U.S.C. § 5102. That is the promise of a purportedly pro-claimant system, *see Anania v. McDonough*, 1 F.4th 1019, 1026 (Fed. Cir. 2021), but it is a promise not currently being kept for those in the class to be certified.

Upon consideration of the foregoing, it is

ORDERED, pursuant to Rule 23(c)(1), that the following class is certified for purposes of this petition: all claimants or prospective claimants (1) who have submitted or submit to the Secretary, by paper, an intent to file a claim or a request for an application to do so; (2) to whom the Secretary has not mailed or otherwise delivered a paper copy of each appropriate application form; and (3) from whom the Secretary has not received a corresponding VA application form. It is further

ORDERED, pursuant to Rule 23(f), that petitioners' counsel is appointed as class counsel. It is further

ORDERED that the petition is GRANTED IN PART. The Secretary shall conduct a review of all cases that fit within the class definition, and for each class member, within 180 days after the date of this order, (1) furnish an application and instructions in a manner reasonably calculated to ensure receipt, free of all expense, by sending or delivering a paper application or (2) receive affirmative confirmation that a paper application is not needed. It is further

ORDERED that the Secretary update his template response letter to RFAs and ITFs so that it informs claimants of their right to a paper application.

39